## ALLEN *vs.* DE WITT.

A testator by his will authorized his executors " to sell his real and personal estate in such parcels, at such times, and for such considerations as they should judge proper for the purpose of discharging his debts and creating funds for the support of his family." *After payment of his debts* he directed the *avails* of his property to be equally divided among all his children. Before the testator's debts were paid, the husband of one of the daughters being indebted to the plaintiff, procured from the executors a conveyance of a portion of the real estate for the purpose of enabling him to mortgage it to secure the debt. Nothing was paid for this conveyance, but the husband agreed to disencumber the land by paying the mortgage, and then to reconvey to the executor, or in default thereof, that the value of the land might be charged against his wife's distributive share in the estate. On a bill filed to foreclose the mortgage given by the husband and wife according to this arrangement, *held* that the conveyance was not an execution of the power contained in the will and passed no title, and therefore that the mortgage was not a lien upon the interests of the testator's other heirs in the premises.

Under such a power it seems that a sale of the real estate by the executor, for the purpose of distribution among the testator's children, could not be made until after the debts were paid, and that the sale should then be absolute for money or funds capable of distribution according to the will.

*Per* PRATT, J. The power of sale contained in the will is restricted to a sale for the purpose of paying debts or creating funds for the support of the family until a settlement of the estate. By the term " avails" of his property, as used in the will, the testator meant the corpus of his estate after payment of his debts, &c.

Therefore, it seems, that the provisions of the will did not work an equitable conversion of the real into personal estate : and the real estate descended as such to the heirs subject to the execution of the power.

APPEAL from the supreme court. The case was this: The late Simeon De Witt died on the 3d of December, 1834, leaving

a will bearing date the 9th of September in that year, which, after making certain special devises and bequests, proceeded as follows: "I empower my executors to sell all my estate, both real and personal, not specially bequeathed or devised, in such parcels, at such times, and for such considerations as they shall judge proper for the purpose of discharging my debts and creating funds for the support of my family, and on such sales to give the proper legal conveyances." "After my debts shall have been paid, the *avails* of my property shall be equally divided among all my children." He appointed his son Richard Varick De Witt and Charles C. Broadhead executors, but the former alone qualified, and letters testamentary were issued to him. Richard Varick De Witt, Susan L. Hubbell wife of Levi Hubbell, William L. De Witt and Mary L. De Witt were the only children of the testator and his heirs at law.

The said Levi Hubbell was indebted to Gilbert Allen in the sum of $4000 and upwards, and being pressed for payment or security, procured from the executor of the will aforesaid a conveyance of certain premises situated in Ithaca, Tompkins county, of which the testator had died seised, for the purpose of enabling him to execute a mortgage thereon to Allen, to secure that debt. The conveyance was executed on the 8th of September, 1837. No consideration was paid by Hubbell, and the conveyance was executed under the expectation that he would soon be able to pay the mortgage, and would then reconvey the *property*; if not, the value of the land was to be charged in account against his wife's distributive share in the estate. The debts of the testator were not paid at the time of this transaction. On the first day of October, 1837, Hubbell and wife executed their mortgage to Allen upon the premises so conveyed, to secure the debt above mentioned, and the bill in this cause was filed in the late court of chancery, before the vice chancellor of the first circuit, to foreclose that mortgage. Hubbell and wife, the mortgagors, Richard Varick De Witt, William L. De Witt, Mary L. De Witt and other persons were made defendants. All the defendants suffered the bill to be taken as confessed, except the

two last named children and heirs of the testator, and they appeared and defended.

The vice chancellor sustained the bill and decreed a foreclosure and sale. William L. De Witt and Mary L. De Witt appealed to the chancellor, and pending the appeal the cause became vested in the supreme court under the new constitution. That court, sitting in the sixth district, reversed the decree of the vice chancellor, and adjudged that the mortgage in question was no lien upon the two undivided fourth parts of the premises, which, on the death of the testator, went to the appellants, William L. and Mary L. De Witt. The decree further provided that an equitable division of the premises be made by metes and bounds, and that the complainant have leave to sell the east half thereof, the said William L. De Witt having made certain erections and improvements on the other half. The complainant appealed to this court.

*A. Mann,* for appellant, cited *Niles & Sherwood* v. *Stevens,* (4 *Denio,* 399;) *Peter* v. *Beverly,* (10 *Peters,* 532;) 2 *R. S.* 109, § 55; *Crosby* v. *Wendell,* (6 *Paige,* 548;) *Bogert* v. *Hertell,* (4 *Hill,* 492;) 1 *R. S.* 734, § 96.

*S. Love,* for respondents, cited *Bloomer* v. *Waldron,* (3 *Hill,* 364;) *Chance on Powers,* 52, *Lond. ed. of* 1831; *Judson* v. *Gibbons,* (5 *Wend.* 227;) 4 *Kent's Com.* 326; *Conklin* v. *Edgerton's Adm'r,* (21 *Wend.* 437.)

GARDINER, J. The question presented by this cause is, whether the power given to the executors to sell the real estate of the testator, was well executed by the conveyance to Hubbell.

The general rule is, " that to the due execution of a power, there must be a substantial compliance with every condition required to precede or accompany its exercise." (*Chance on Powers,* 172, § 454; 1 *R. S.* 737, § 121.) The condition in this will is, that *after* the debts of the testator shall have been paid, the *avails* of his property should .be equally divided between his children. By *avails* I understand cash, or securities,

Allen *v.* De Witt.

the representatives of money. The debts of the testator were not paid at the time of the conveyance to Hubbell.

The argument in support of the sale is, that it was in effect a division of the avails, and a setting apart this parcel of land, considered as cash, to the use of Hubbell in right of his wife, in part satisfaction of her claim as one of the children of the testator, to an undivided fourth part of the proceeds of her father's estate.

There are two objections to this view of the case. 1st. The execution differs from the power in this, that the sale to Hubbell was *before*, while the testator declares that the division of the "avails" shall be *after* the debts were paid. In *Dike* v. *Rich*, (*Cro. Car.* 335,) the power was to sell all the tenements, or so much as with the goods were *sufficient* to pay debts, &c. It was held not only that there *must be a deficiency*, but that a sale could only be made to the *extent* of it. Here the debts must be *paid* before the residue of the "avails" can be divided. 2d. The power requires an *absolute* sale, for a consideration fixed by agreement between the executor and the vendee, which was to constitute part of the proceeds or avails of the estate, and as such to be capable of being applied in payment of debts, or of forming a fund for the maintenance of the family, and of ultimate division among the heirs. In this case, however, the sale was not absolute. Hubbell had the right and was bound to pay off the mortgage and reconvey the land to the executors. Failing in this, he was to allow the *value*, (not the consideration stated in the deed or agreed upon at the time of sale,) towards payment of the share of his wife in the estate. It is difficult to see how this agreement of Hubbell could be made available in the payment of debts, or in support of the family, or of division among the children of the testator. The complainant, as I understand his counsel, does not claim that the sale to Hubbell was valid against creditors, or that it might not be avoided by a sale by the executors for the purpose of creating a fund for the support of the family. The concession is inconsistent with the notion that the conveyance to Hubbell was a valid exercise of the power. The sale contemplated by the will was obviously one which should divest the executors of all further power over the

land conveyed. No second exercise of that power to divest a vendee of an interest acquired by a previous sale in conformity with its provisions, can be tolerated by any fair construction of the will. The object of the sale, was the whole title, as the means of raising the fund to pay debts and for distribution.

What rights then did the complainant acquire by virtue of his mortgage? And 1st. The will creates a general power of sale in trust for the benefit of creditors and the children of the testator. The fee descended to the heirs at law, of which Mrs. Hubbell was one, subject to the execution of the power which might be compelled after a reasonable time had elapsed by those for whose benefit it was created. (1 R. S. 734, § 96.)

Mrs. Hubbell's interest then in the mortgaged premises was an undivided fourth subject to the power. This she probably pledged to the complainant by the execution and acknowledgment of the mortgage in question, together with all her rights (if any) acquired by the conveyance to her husband. And this was all. Her claim to a share in the final division of her father's estate was a chose in action in reference to which she was incapable of making a contract of any sort. The mortgage estopped Hubbell from insisting that he was not the owner of the land, but this did not apply to the respondents, who were at liberty to show the nature of his interest, or that he had none whatever. The deed to Hubbell is made by R. V. De Witt, as acting executor under and by virtue of the authority contained in the will, and as it was not in pursuance of the power, it conveys nothing; although the executor, as one of the heirs, might be estopped by it, and by the agreement made with Hubbell, under the circumstances disclosed by the proofs in the cause. If this be so, then the complainant acquired an interest in an undivided *half* of the premises subject to the power contained in the will. And this, so far as I can perceive, is the extent of his interest.

It is said that the doctrine of equitable conversion applies, and that in a court of chancery the real estate is considered as personal property, and that consequently, the right of Hubbell to his wife's share was absolute, and he could make such disposi-

tion of it as he chose. I do not see how this view aids the complainant. Hubbell did not stipulate to pledge or mortgage his wife's interest in her father's estate, or any part of it, to the complainant. He agreed to give and the complainant to receive a specific lien by way of mortgage upon a particular parcel of land, of which Hubbell claimed to be owner in virtue of the execution of a power of sale, of the nature and extent of which the complainant was bound to take notice. It turns out that the mortgagor was not owner, and both parties are disappointed. It is true that he pledged his wife's share to the executor, to indemnify the estate against the mortgage in the event that he failed to discharge it, and reconvey the land according to his agreement. If the complainant wishes to be substituted in place of the executor, and have the benefit of that arrangement, it must be upon a bill framed for that purpose with the proper parties. These respondents would have no interest in a question which was to determine who should take the share of Mrs. Hubbell, upon the ultimate division of the avails of the estate. It is a very different question whether land which they have inherited from their father shall be sold under this mortgage.

The decree should be reversed, and a new one entered declaring the right of the complainant to sell an undivided half of the premises subject to the power of sale for the purposes mentioned in the will, &c.

PRATT, J. The question in this case is whether the conveyance to Hubbell is a good execution of the power to sell conferred upon the executors by the will, and binding upon the other heirs and devisees of the testator. A bare statement of the facts of the case would seem to be sufficient. If, under a power of this character, executors are authorized thus to dispose of estates intrusted to their care, the rights of heirs and devisees are but feebly protected.

But let us examine the grounds upon which this gross perversion of the duty at least, if not the power, of the executor is sought to be sustained, and see if there be any foundation there-

for, either in any arbitrary rule of law, or in any peculiar equity arising out of the circumstances of this case.

It is insisted that the will gives the executor general power to sell not only for the purpose of paying the debts and providing for the temporary support of the family, but also for the general purpose of distribution ; that in such case the doctrine of equitable conversion applies ; the land becomes assets in the hands of the executor ; and the other legatees, before any equity in their favor can exist which shall give them a right to oppose the foreclosure of this mortgage, must show a deficiency of assets to satisfy their share of the estate.

First. I do not thus read the will. The power to sell is restricted to the purposes therein specified, viz. to pay the debts and to create funds for the support of the family. Wills are to be construed according to the obvious intention of the testator ; and we should not presume an intention to change the condition and character of the estate, unless such construction be clearly required by the terms of the will. It is not enough, as the learned vice chancellor suggested, that such construction could be given to the will without doing any violence to its provisions. Where it is contended that the testator intended to disinherit the heir, or change the condition of the property, such intention must be affirmatively shown. In this case I can find no evidence in the language of the will tending to prove that the testator intended to confer upon the executor power to sell for the general purpose of distribution. It is clearly not contained in that part of the will conferring power to sell.

But it is insisted that the power should be inferred from the subsequent clause, providing for a division of the avails of the property, after satisfying the debts, among all the children. The word *avails* in that part of the will was evidently a careless expression, and does not convey the true intention of the testator. This was conceded upon the argument, but the counsel for the plaintiff contended that it should be read as the *residue of* " the avails of the property." It was doubtless intended as a residuary clause, but I think the testator meant simply the residue of his property not already disposed of, and not the res-

.Allen *v.* De Witt.

idue of the avails.  But whether this be the true meaning which the testator intended to give to the expression or not, it would be a dangerous exercise of the power of construction vested in the courts, to hold that a word, conceded to have been carelessly used by the testator, and which if literally construed would not express his intention, should have the effect to materially enlarge the power of the executor, and to change the condition and nature of nearly the entire estate.

The learned vice chancellor suggested that the power might be found in that provision of the will for *creating funds for the support of the family ;* that the support here spoken of might refer to a final distribution of the estate ; that in receiving their distributive share of the property the family would be receiving the means of support.   These suggestions, although ingenious, I think are not sound.   ·We are to assume that the testator was acquainted with the ordinary use of language, and that he used it in his will intending to give it its ordinary signification.  There is nothing peculiar in that expression.   It was evidently intended to mean a temporary support of the family until the estate should be settled.   The testator owed a ·large amount of debts, and it would require large sales of property both real and personal to raise the necessary funds to satisfy them, and hence considerable time must elapse before it could all be accomplished.   In the meantime the family would require support.   He therefore gives his executors power over his real property to sell the same for those purposes, and those only.

Suppose property sufficient had been sold .to pay the debts, and they had in fact been satisfied, could the ·children have compelled the executor to sell the residue for the purpose of distribution ?   If the power is given in the will they have the right to compel its execution ; but I am satisfied no such general power is given.   If I am right in this construction of the will, the land descended to the heirs subject to the power to sell for the purposes therein specified.   No sale of these lands for that purpose having been made by the executor, it follows that the respondents have not been divested of their title to the lands

covered by the mortgage in question, and that it is no lien up on their interest therein.

Secondly. Let it be conceded that the will does authorize the executor to sell the property for general distribution; that it requires him to convert it into money and distribute the avails among the children of the testator. The evidence in this case shows that he sold this land for no such purpose. It was intended merely as a temporary conveyance to enable Hubbell to secure this debt which was pressing him, and with the expectation that in a short time he would be enabled to raise the mortgage and reconvey the land. As equity looks at the substance and not the form of a transaction, this should be deemed a mortgage by the executor to secure Hubbell's debt. But if it be deemed a sale by the executor, it was a gross perversion and abuse of the power conferred upon him by the will, and vests no title in any one receiving the fruits of this breach of trust with knowledge of the circumstances. The plaintiff below must be deemed to have taken the mortgage with such knowledge. Claiming under the will, it is conceded that he must be deemed to know its contents. He knew also that Hubbell paid nothing down for the land, for if he had had money to pay for the land he could have paid the debt without a resort to this method of securing it; besides, the executor swears that the agent of the appellant knew the purpose for which the conveyance was made. If, therefore, the construction of the will contended for by the appellant be the correct one, it only authorized the sale of the property to create funds for the payment of the debts, for the support of the family, and for a final distribution of the residue, and these purposes could only be effected by a sale for cash. In this case he neither sold for any of those purposes, nor did he receive any consideration on such sale. The grantee having knowledge of this breach of trust, the conveyance is void as against the children of the testator.

But it is claimed that Hubbell was entitled to his distributive share of the estate, and that this conveyance should be construed as a payment to him of so much of the legacy to which his wife is entitled under the will. The conveyance on its face does not

Allen v. De Witt.

purport to be given for any such purpose, nor does the evidence show that such was its object. If the appellant claims that he may be protected by that consideration, the onus probandi is clearly upon him to show that it may be done without injury to the interest of others; that by making such disposition Hubbell will get no more than he is entitled to have; and that there will be enough left to satisfy the legacies to which the respondents are entitled. The evidence does not show this to be so. In the first place, it seems that in some way Hubbell has encumbered some $50,000 worth of the real estate, besides this which is now in litigation. What the nature of that encumbrance is does not very plainly appear. If the claimants should succeed in establishing their claim, in that case Hubbell will have received a very liberal dividend, and much more, I fear, than either of the respondents will ever realize.

In the second place, the evidence does not show that there is property enough left to pay the share to which the respondents are entitled. If we reckon as debts due from the testator at his decease the amount which has actually been paid upon his contingent liabilities, he owed at that time $130,000, which, deducted from the estimated value of his property $220,000, would leave to be distributed $90,000. The respondents, we may fairly assume, were entitled after paying the legacies to $40,000. Upon the doctrine of equitable conversion the executor was entitled to receive the rents and profits for the benefit of the legatees, and if they amounted to the interest upon the value, the share to which the respondents would have been entitled at the time the testimony was taken, some ten years and upwards after the testator's death, would amount to nearly $70,000. But the executor swears that there is now property over and above the amount in litigation only to the amount of $50,000 or $60,000. Out of this some $10,000 of debts must be paid, and it leaves from $40,000 to $50,000, showing quite a deficit in the amount to which the respondents are entitled. It is true there may be evidence in existence to show that the respondents have already received their shares, or so much of them that the property left is sufficient to satisfy them; but if that be so, the

burden of proof is upon the appellant to show it. It does not affirmatively appear from the testimony before us. As I have before remarked, the conveyance was a gross breach of trust on the part of the executor, of which the appellant is chargeable with knowledge. If he claims the right to retain the fruits of this breach of trust, it clearly is not asking too much to require him to show that it may be done without injury to others interested in the estate.

I am therefore satisfied that the conveyance to Hubbell was not a good execution of the power, and did not convey the interest of the respondents in the estate.

But the decree of the supreme court was erroneous in providing for a partition of the premises. I am not aware of any way in which that can be done in this suit. Other persons not parties may possibly be interested in that question. Even in a partition suit the court will not try the question of title. If the mortgage is a lien it is a lien upon the undivided moiety of the premises. The decree of the supreme court must therefore be modified in that respect. It should also provide that the decree shall be without prejudice to any equitable claim in any future proceedings which the respondents may have for improvements made by them upon the joint property. In other respects the decree of the supreme court must be affirmed without costs.

Ordered accordingly.