## McCay *v.* Lamar.

*(Circuit Court, S. D. New York. April 21, 1882.)*

1. CONFISCATION OF PROPERTY—RECOVERY OF AVAILS—CLAIM OF PROPORTION.
  About the close of the late civil war a quantity of cotton was seized by the United States treasury agents and confiscated as property used in aid of the rebellion. Subsequently the owner of the cotton brought proceedings in the court of claims and recovered the value of the property so seized and sold, and afterwards died. After his death a claim was made by a third party as owner

of a portion of the cotton seized, and this action instituted against the executor of decedent to recover the value thereof. *Held*, that the will of decedent describing the lots claimed by him, and corresponding in amount with the claim made by such third party, and advertisements of the same through the newspapers requesting the owner to come forward, pay advances and expenses, prove ownership, and receive balance due; and the entries in the books of decedent of the same, as cotton owned by a party unknown,—are satisfactory proof of ownership in the party claiming his portion of the avails received by decedent.

2. SAME—CLAIM OF THIRD PARTY—RIGHT TO RECOVER.

Where it was shown by proof that the company, claiming a proportion of the avails of cotton seized by the government and sold, as property used in aid of the rebellion, but the avails of which had been afterwards reimbursed to the owner, was chartered for the purpose of owning, navigating, and freighting vessels engaged in foreign and domestic commerce, and also that it was engaged in running the blockade, but it did not show that the decedent, owner of the property confiscated and sold, or the defendant in this action, were in collusion with such company in any unlawful act, coupled with the fact of the recovery of the avails by defendant, no good reason is shown why the company or its assignee might not recover his proportion of the avails from the estate of the decedent.

3. SAME—ASSIGNMENT OF RIGHT OF ACTION.

Where an assignment was made by a company having a valid claim against the testator, who held the avails of the property in trust for the assignor, the company having a right to charge him as such trustee, and the disposition of the cotton seized having been directly within their corporate power, and the disposition of the avails impliedly within the same scope, and the president and all the directors joined in the execution of the assignment, *held*, sufficient to transfer the title to the claim to the plaintiff.

4. SAME—ACTION—MATERIAL ALLEGATIONS—MATTERS OF INDUCEMENT.

Where the material allegations of the bill are proved, an allegation that the executor received the cotton as executor of the testator, and held it as such when it was seized, when in fact he received it as surviving partner of testator, is mere matter of inducement, and the bill ought not, therefore, to fail when the material allegations are proved.

5. SAME—DECREE—INTEREST ON AVAILS.

The avails are the amount received for the plaintiff's cotton after deducting the charges and expenses of their recovery, the amount of expense to be ascertained by an accounting, but without interest, unless such avails were so invested as to bear interest, in which case the plaintiff would be entitled to the interest they bore.

In Equity.

*Jos. B. Stewart,* for orator.

*Edward N. Dickerson,* for defendant.

WHEELER, D. J. The defendant is the executor of the will of Gazaway B. Lamar, who owned, was interested in, and connected with large amounts of cotton which were seized in the southern states by United States treasury agents at about the close of the war of the

rebellion and sold, and the proceeds of which were turned into the treasury of the United States. He brought proceedings in the court of claims for the recovery of these avails, and therein recovered in April, 1874, the sum of $579,343.51. The orator claims that $23,-844.88 of this sum was recovered for 136 bales which, subject to some claim for advances in which Lamar was interested, belonged to the Richmond Importing & Exporting Company, a corporation of Virginia, and that the right of that company to this cotton and its proceeds has been assigned to him. This bill is brought for the recovery of these avails, and the cause has been heard upon bill, answer, replication, proofs, and argument of counsel.

Three principal questions have been made in respect to the orator's right of recovery. One is as to whether these 136 bales were embraced in Lamar's recovery. Upon this question careful examinations of the proofs lead to the conclusion that they were. The proof of the proceedings in the court of claims would alone leave the matter somewhat in doubt; perhaps too much so for a foundation for a recovery. But while the case was pending he made his will, that of which the defendant is executor, containing these clauses: "It is my further will and desire, and I hereby direct my executors, to press my claims upon the government of the United States for the payment of the following cotton, which are now before the court of claims." Among other lots the following was specified: "136 bales cotton belonging to a gentleman in Richmond, Virginia, on which C. A. Lamar made advances." "When all the collections for this private cotton are made, and the amount placed to the credit of the several accounts, and interest charged to each account for my advances, then a division must be made of the net balance to the private account of each." After the recovery he advertises in the Richmond *Enquirer* for the owner of two parcels of cotton, and this lot was in two parcels, stating, "I have to-day received payment for the same from the United States treasury," and requesting the owner to come forward, pay advances and expenses, prove ownership, and receive the balance due. The proofs also show that he entered this cotton in his books as belonging to an owner unknown, but advertised for in Richmond, charged it there to the United States at $23,844.88, and credited to the United States that sum as received for it. This clearly shows that his claim embraced this cotton; that he understood that he recovered for it; and altogether the proof is quite satisfactory that he did recover for it. The proof, including correspondence, shows quite clearly that

this cotton was purchased and forwarded to C. A. Lamar by a Mr. Hambleton, of Richmond, as agent for the Richmond Importing & Exporting Company, and was owned by that company.

Another question is as to whether that company could have recovered for this cotton or its avails, for, it is said, if that company could not its assignee could not. It is argued that it could not, because it was chartered and organized to run the blockade and aid the rebellion. The proof shows that it was chartered "for the purpose of owning, navigating, and freighting ships and other vessels engaged in foreign and domestic commerce, and of buying and selling the products and commodities so freighted or intended to be freighted," and that it was engaged in running the blockade, and in that way indirectly, if not directly, to some extent aiding the rebellion. But the proof does not show that C. A. Lamar or Gazaway B. Lamar received this cotton under any arrangement that it should be used in aid of the rebellion, or in any unlawful manner, such that it could not be recovered for in the hands of either; and the fact that it was recovered for by the latter shows that nothing he was doing with it forfeited or outlawed it. The corporation appears to have been lawful enough in itself. The business it was chartered for might be lawful or unlawful. In transacting unlawful business it would incur the consequences of its unlawful acts the same as a person, but such unlawful acts would not of themselves forfeit its property not involved in them, nor its other lawful rights. As the case is presented, no good reason is shown why this company might not, in its own name, have recovered these avails of the defendant's testator in his life-time, or of his executor since his decease.

The other principal question is whether the claim is so assigned to the orator that he can recover upon it in his own name. It is not questioned but that an assignee of a mere right of action or recovery may maintain a suit in equity upon it in his own name; but it is strenuously argued that no real and valid assignment of this claim is shown. That company had a valid claim against Mr. Lamar, the testator. He held these avails of the property of the company in trust for the company. The company had a right to charge him as its trustee of the funds, whether he was willing or not; he seems to have been willing, however, and to have charged himself so far as he could. The disposition of the cotton was directly within the corporate powers of the company; and the disposition of the avails of the cotton was impliedly within the same scope. The charter provided that "the affairs of the company shall be man-

aged by a president and board of directors, whose term of office, and their number, shall be determined and elected by the stockholders, and the said board of directors shall possess all the corporate powers of the company." The proof shows that no meeting of the company had been held, for any purpose, for many years, and that very little or no corporate business had been transacted within a number of years before the assignment. It does not show what term of office was determined upon for the directors. It does show by the testimony of the officers who the directors were at the time, which was competent for that purpose, especially as the proof also shows that the records were destroyed. One of them died. The president and all the others joined in the execution of the assignment. This seems to be sufficient to transfer the title to the claim to the orator.

The bill alleges that Gazaway B. Lamar received this cotton as executor of C. A. Lamar, and held it as such when it was seized. The answer denies that he was executor of C. A. Lamar, or held it as such. The proof does not support the bill, but sustains the answer on this point. He appears to have received it as surviving partner. This failure to sustain the bill in this respect is argued to be fatal to the right to recover upon the bill. This argument is not considered to be well founded. The orator does not seek to recover through C. A. Lamar, nor upon any right of his, nor upon any obligation incurred by him. How this cotton came into the hands of Gazaway B. Lamar is wholly immaterial in this case. The statement of it is mere inducement. The material facts are that the cotton belonged to the Richmond Importing & Exporting Company, and that the testator received the avails of it, and that the orator has succeeded to the right of the company to the avails. The bill ought not to fail when the material allegations are proved. The orator appears to be entitled to a decree for the payment of these avails. The avails are the amount received for this cotton after deducting the expenses belonging to it and the recovery for it. It is stipulated that the expense of recovering the whole sum was $100,-000. The expense of recovering this part may be in proportion and may not; it is not stipulated what it would be. That fact is to be ascertained. The orator claims interest on the avails, and it is included in the prayer of the bill. On the facts stated the orator is not entitled to interest as such. The testator was not a borrower of the money, nor was he wrongfully withholding it. Still, if these avails were so invested as to bear interest, the orator would be entitled to the interest they bore as a part of the avails. An account,

therefore, is necessary of the expenses and charges belonging to this cotton, and to the recovery of the sum received for it, and of the interest received, if any.

Let there be a decree that an account be taken of the charges and expenses chargeable to this cotton, and to the recovery of what was received for it, and of the interest received upon the avails of it, if any, and for the payment of the balance to the orator out of any assets of the estate in the hands of the defendant, with costs.