[Civ. No. 1493.   First Appellate District.—May 26, 1915.]

W. F. CORDES, Appellant, v. R. T. HARDING and HENRY E. MONROE, Copartners Doing Business Under the Name and Style of Harding & Monroe, Respondents.

CONTRACT—APPORTIONMENT OF "RECOVERIES OR AVAILS EFFECTED IN SUITS"—CONSTRUCTION OF STIPULATION OF PARTIES.—A stipulation between the plaintiffs and their respective attorneys in two different actions against a common defendant, "that all recoveries or avails effected in either of said suits under or by virtue of the attachments which have been issued therein and levied upon the property (of the defendant) shall be ratably apportioned between said plaintiffs according to the respective amounts of their claims, or according to the respective amounts of the judgments rendered and entered in said suits, should judgments be recovered and entered," is not subject to the construction that only such recoveries as might be obtained by either party from the common defendant under their judgment should be ratably apportioned, but contemplates that if the action, attachment, or judgment of either party culminates in a financial profit, whether as the result of an enforced satisfaction of the judgment by execution, or as the result of a fortuitous sale without resort to execution, the "recoveries" on the one hand, and the "avails" or proceeds on the other, are to be ratably apportioned between the parties to the stipulation, and one of the parties is therefore liable to the other for the latter's proportionate share of the sum of money realized by the former from

the sale of his cause of action and judgment to a third party without execution.

ID.—"AVAILS AND RECOVERIES"—MEANING OF.—The word "avails" is not synonymous with the word "recoveries," and as ordinarily understood and judicially defined, means the profits or the proceeds of the sale of property after deducting expenses; and the word "recover" when used in connection with actions at law for money does not necessarily or even ordinarily include the actual payment of the money sued for, but only the recovery of the judgment for money.

ID.—PLEADING—ADMISSION—EVIDENCE—CONSIDERATION.—Where the answer of the defendant in an action to recover upon such stipulation contains nothing more than a naked denial of the existence and character of the particular consideration alleged in the complaint, the existence of a sufficient consideration is an admitted fact in the case, and proffered evidence by the plaintiff upon the subject is properly excluded.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Marcel E. Cerf, Judge.

The facts are stated in the opinion of the court.

J. C. Campbell, Weaver, Shelton & Levy, and Joseph Kirk, for Appellant.

Robert H. Borland, for Respondents.

LENNON, P. J.—This is an appeal from a judgment of nonsuit in an action instituted for the recovery of the sum of $1,720.20, alleged to be due to the plaintiff under the terms and conditions of a contract entered into by him with the defendants.

The sufficiency as a matter of law of the pleaded and proven facts to constitute a cause of action was challenged by the motion for nonsuit, and these facts, as admitted by the pleadings or established in evidence, are conceded to be substantially as summarized in the plaintiff's statement of the case, which, with some slight modifications, will be adopted as a general statement of the facts involved in and essential to a determination of the points presented in support of the appeal.

In the early part of the year 1910 and for some time prior thereto the defendants, Hardin and Monroe, were attorneys

for the Consolidated Mines Company, a corporation, which owned certain mining property in the county of Amador. At this time they, the defendants, asserted a claim aganst the Mines Company for $10,193.25 for legal services, and through their assignee, I. Linderman, brought suit, and on May 9, 1910, procured an attachment upon the company's property. At that time the company was indebted to certain persons for merchandise sold in various amounts, aggregating $2,283.65. These creditors threatened to commence proceedings against the Mines Company to have it declared a bankrupt. However, they did not pursue this plan, but assigned their claim to W. F. Cordes, the plaintiff here, who brought an action against the Mines Company, and caused an attachment to be levied on June 17, 1910, on the same property of the company which had been previously attached in the suit brought by Linderman. A stipulation was thereupon made, entitled in the court and causes of Linderman and Cordes against the Mines Company, signed by the attorneys for the respective plaintiffs, providing as follows:

"It is stipulated by and between the plaintiffs in the above entitled actions and their attorneys that all recoveries or avails effected in either of said suits under or by virtue of the attachments which have been issued therein and levied upon the property of the California Mines Company, a corporation, in the county of Amador, state of California, shall be ratably apportioned between said plaintiffs according to the respective amounts of their claims, or according to the respective amounts of the judgments rendered and entered in said suits should judgments be recovered and entered.

"The following are the claims assigned to the plaintiff Cordes and which are to share with the demand of the plaintiff Linderman: E. I. du Pont de Nemours Powder Co., $373.75; John A. Roebling Sons, $1,554.69; H. S. Crocker Co., $44.40; Pacific Coast Rubber Co., $310.81.

"It is further stipulated that in case of sale upon execution under either of the attachments in said actions Nos. 29,474 or 30,195, a copy of this stipulation shall be delivered to the officer making such sale, and that such officer shall distribute the proceeds in accordance with this stipulation.

"This stipulation shall be deemed a part of another stipulation this day entered into between the attorney for Cordes and the attorney for plaintiff in a certain action pending

in the county of Alameda, state of California, entitled 'The
Amador Keystone Mining Co., plaintiff, vs. California Con-
solidated Mines Co., a corporation, defendant, and numbered
32,244 therein, dated June 23, 1910.''

The stipulation referred to in the paragraph last quoted
was one entered into between the attorney for Cordes and the
attorney for the Amador Keystone Mining Co., whereby it
was agreed that Cordes's attachment should have precedence
over that of the Amador Company in so far as the property
of the company defendant known as Weidman-Mahoney
mines was concerned. Neither of these stipulations was filed
among the records of the action of Linderman vs. the Mines
Company. Linderman subsequently obtained a judgment for
$8,883.10, but no execution was issued thereon. Prior to
December 1, 1911, a transcript of the judgment was filed in
the office of the recorder of Alameda County. On November
23, 1910, Cordes obtained judgment against the Mines Com-
pany for $2,301.90. The property of the company was sub-
ject to sale under another lien prior in time, which had at-
tached by virtue of the entry of a judgment against the Mines
Company in favor of a corporation known as the Chichizola
Estate Co. Execution was issued on this judgment and levied
on the property, and after proper proceedings the property
was sold by the sheriff on December 16, 1910, to the Chichi-
zola Estate Co., and a certificate of sale delivered to it and a
duplicate recorded. Thereafter the Chichizola Estate Co.
paid taxes in the sum of ten thousand dollars which were a
lien on the property, and later assigned its certificate of sale
to one William J. McGee. Before the period of redemption
expired the defendants Hardin and Monroe, who were the
actual owners of the Linderman judgment, obtained an ex-
tension of that period by demanding a statement of the rents
and profits under section 707 of the Code of Civil Procedure.
On December 22, 1911, within the extension the defendant
Monroe appeared in Jackson, the county seat of Amador,
with the money to redeem the certificate which McGee held
by assignment from the Chichizola Estate Company. It is
an admitted fact in the case that Harding and Monroe had
on deposit the sum of twenty-three thousand dollars, and
were ready to exercise their rights as subsequent judgment
lien-holders to redeem the property of the Mines Company
from McGee. The property was worth about thirty thousand

dollars and on that day McGee purchased the cause of action, attachment, and judgment of the defendants Hardin and Monroe without any limitation or restriction for the sum of seven thousand dollars. Since that time McGee has claimed to be the sole owner of the Linderman cause of action and the judgment obtained therein. Four days later the sheriff of Amador County executed and delivered to McGee his deed to the property in question. Neither plaintiff Cordes nor his assignors have received anything whatever from the suit, attachment, or judgment against the Mines Company. A demand was made upon the defendants for the payment of a share of the money received by them from McGee, but the defendants ignored the demand.

The plaintiff's cause of action, which was pleaded in two counts, proceeded upon the theory: 1. That the money received by the defendants from McGee upon the sale to him by the defendants of the Linderman cause of action and judgment constituted either ''an avail or recovery'' effected in the Linderman action within the meaning of those words as they were employed in the contract, and that therefore the defendants were obligated, in keeping with the terms of the contract, to share ratably with the plaintiff the sum received from McGee; 2. That if such sum was not an avail or a recovery, then when the defendants sold their judgment to McGee they put it out of their power to effect any avails or recoveries, and thereby breached their contract with the plaintiff, and consequently must respond to the plaintiff in damages.

It was the contention of the defendants in the court below, and it is their contention here, that the word ''avails'' as used in the contract in suit is synonymous with and means no more than the word ''recoveries,'' and that therefore the latter word controls the interpretation which must be placed upon the intent of the parties and the scope and effect of the contract. With this contention as a basis it is argued that the word ''recoveries'' as employed in the contract indicated that the intent of the parties was only that such recoveries in the strict sense of the term as might be had against the common defendant should be prorated with the plaintiff. Accordingly it is insisted that the proceeds resulting from the sale by the defendants to McGee of the Linderman cause of action and the judgment obtained therein were not ''recoveries'' within

the intent and meaning of the contract. In support of their contention the brief of the defendants purports to quote the contract to read "that all recoveries or avails in either of said suits under or by virtue of the attachments which have been issued therein . . . shall be ratably apportioned between the plaintiffs according to the respective amounts of the judgments rendered and entered." In construing the contract we are requested to particularly observe the language "recoveries or avails in either of said suits"; but we note that the exact language of the contract in this particular is "recoveries or avails *effected* in either of said suts"; and in passing it should also be noted that the immediately following and equally controlling clause of the contract contains a provision not quoted or referred to by the defendants. That clause in its entirety provides that the recoveries or avails effected "shall be ratably apportioned between said plaintiffs according to the respective amounts of their claims or according to the respective amounts of the judgments rendered and entered in said suits, 'should judgments be rendered or entered.' " Obviously the word "effected" and the clause of the contract concerning the contingency of the rendition and entering of a judgment, when considered in conjunction with the meaning of the words "recoveries" and "avails" as employed in the contract, must have an important bearing upon the interpretation to be given to the contract. "To get or obtain again, to get renewed possession of, to win back, to regain" is Webster's definition of the word "recovery"; and Anderson's Law Dictionary declares that recovery means "to obtain by judicial action or proceeding." In some jurisdictions it has been held that the word recovery in its strict legal sense means to recover a thing of value or its value by the satisfaction or execution of the judgment in an action instituted for that purpose. Our supreme court, however, has very recently decided that the word "recover," when used in connection with actions at law for money, does not necessarily or even ordinarily include the actual payment of the money sued for . . . ; that ordinarily the word did not include more than the recovery of the judgment for money." (*Westinghouse etc. Co.* v. *Chambers,* 169 Cal. 131, [145 Pac. 1025].) If the word "recoveries" as employed in the contract in controversy, had stood alone, there would have been much force in the contention that, in its strict legal sense and, perhaps, in its liberal

sense, it limited the contractual obligation of the defendants to share ratably with the plaintiff only such sum as might be ultimately and actually recovered by the defendants Harding and Monroe under and by virtue of their judgment in the Linderman action from the common defendant the Mines Company. The word "recoveries," however, is not the sole basis of the obligation of the contract. It is accompanied by the word "avails" which, if it means something more than and different from what is included within the definition of the word "recoveries" must be considered as an essential element in determining the scope and effect of the obligation of the contract. The word "avails" is defined to mean: "(1) Advantage, profit or benefit in a general sense; also value or estimation; (2) efficiency for a purpose, advantage to an object or end; (3) profits or proceeds; as the avails of a sale or action." (Century Dictionary.) The word "avails" has been judicially defined to mean (1) cash, or securities, the representatives of money; (2) the proceeds of property after deducting expenses. (*Allen* v. *DeWitt*, 3 N. Y. 276; *McCay* v. *Lamar*, 20 Blatchf. [U. S.] 474, 12 Fed. 367.) As thus defined, the word "avails" is distinctly different in its scope and effect from the limited import of the word "recoveries." This being so, the word "avails" cannot be said to be synonymous with the word "recoveries," and that the parties to the contract in controversy contemplated that each word used would express a variant meaning in keeping with their generally understood and accepted definitions is fairly well indicated by the fact that they were employed in the alternative. But however that may be, it must be held, in the absence of any expression in the contract to the contrary, that words which are not synonymous were never intended to be so used. The Linderman cause of action and judgment were undoubtedly property which might legally be made the subject-matter of a sale. (Civ. Code, secs. 14, 654, 1722.) That cause of action and judgment were sold, and the proceeds of the sale netted the defendants the sum of seven thousand dollars. That the sale was effected directly as the result of the defendants' action, attachment and judgment against the Mines Company cannot be seriously disputed, and if, as we have seen, the word "avails," as ordinarily understood and as judicially defined, means the profits or proceeds of the sale of property after deducting expenses, then clearly it applied

with peculiar aptness to the result of the sale in question here, and consequently, nothing to the contrary appearing in the contract, it must be held that, by the use of the words "recoveries or avails," the parties to the contract contemplated and intended that if the defendants' cause of action, attachment, or judgment culminated in financial profit, whether as the result of an enforced satisfaction of the judgment by execution, or as the result of a fortuitous sale without resort to execution, the "recoveries" on the one hand and the "avails" or proceeds on the other, should be ratably apportioned between the parties to the contract. This being so, the fact that the defendants did not realize upon their judgment through the medium of an enforced satisfaction by execution sale was not a vital factor in the determination of the question as to whether or not the plaintiff's pleading and proof in the present case stated and presented a cause of action.

Our conclusion in this behalf is fortified by a consideration of several and various clauses of the contract. We think that the clause which refers to recoveries or avails effected by suit and attachment contemplated the contingency that the claims of the plaintiff and defendants might be settled if not fully satisfied without recourse to further proceedings, and that clause of the contract which deals with the recovery of a judgment not as a certainty but rather as an alternative contingency, was apparently inserted solely for the purpose of making the amount of any judgment that might be rendered and entered the basis of the agreed prorating in lieu of the sum originally stated in the respective claims of the plaintiff and defendants. Again, that clause of the contract which provides what shall be done "in case of sale upon execution" indicates that the parties to the contract contemplated that a judgment and execution sale were only possible contingencies, and therefore not necessarily prerequisite to the obligation of the defendants to prorate the proceeds or avails realized, or rather, effected as the result of their suit and attachment.

For the foregoing reasons we are of the opinion that the plaintiff's complaint and the proofs offered and received in support thereof, stated and showed a cause of action, and that therefore, the defendant's motion for a nonsuit was improperly granted. This conclusion renders it unnecessary for us to discuss and decide the question as to whether or not the defendants, by making the sale in controversy, voluntarily relin-

quished their power to effect a recovery through the medium of an execution sale, and thus breached their contract.

The plaintiff's complaint, among other things, alleged that the Mines Company was insolvent, and that one of the considerations which induced the defendants to procure their attorney to enter into the agreement was the avowed intention of plaintiff's assignor to throw the Mines Company into bankruptcy, and their forbearance, upon the request of the defendants, to take such action. These allegations were denied generally by the answer of the defendants, and in response to the supposed issue thus made the plaintiff offered to prove certain circumstances immediately preceding and attending the execution of the agreement in controversy, viz., the insolvent condition of the Mines Company, and the determination of the plaintiff's assignors to throw it into bankruptcy, from which they were dissuaded by the promise of the defendants, subsequently incorporated into the agreement, to share the respective avails and recoveries of the interested parties. Upon the objection of the defendants that the matters and things included in the offer were irrelevant and immaterial the offer was rejected, and the ruling of the court in that behalf is assigned as prejudicial error.

The ruling of the trial court was correct. The execution of a written instrument is presumptive evidence of the existence of a consideration (Civ. Code, sec. 1614), and therefore the averment of the plaintiff's complaint as to the existence and character of the consideration was mere surplusage. The burden of pleading and proving the lack of a consideration sufficient to support a written instrument is upon the party seeking to avoid it upon that ground. (Civ. Code, sec. 1615.) The answer of the defendants contained nothing more than a naked denial of the existence and character of the particular consideration alleged in the plaintiff's complaint. This was not sufficient to destroy the presumption of a consideration arising from the written execution of the contract, and consequently the existence of a consideration sufficient to support the contract was an admitted fact in the case which rendered the proffered evidence wholly immaterial and irrelevant.

The judgment appealed from is reversed and the cause remanded for a new trial.

Richards, J., and Kerrigan, J., concurred.