[Civ. No. 2076. Fourth Appellate District.—July 22, 1938.]

GEORGE WEISBROD et al., Appellants, v. ELLEN WEIS-BROD et al., Respondents.

Wm. H. Wylie and Ed. P. Sample for Appellants.

Sloane & Steiner for Respondents.

HAINES, J., *pro tem.*—John M. Weisbrod died a widower on December 21, 1935, leaving surviving him six children, George Weisbrod, David K. Weisbrod, Augusta Weisbrod

Foster, Moritz Weisbrod, Ellen Weisbrod and Walter Weisbrod, as well as the four minor children of a daughter who had predeceased him. Of these the first four are plaintiffs and appellants in the present action, Moritz, who is an incompetent, appearing by Security Trust and Savings Bank, a corporation, as his guardian. Defendants and respondents are Ellen Weisbrod, Walter Weisbrod and one W. F. Bothe, as guardian of the four minor grandchildren.

Decedent had for some years prior to his death lived at San Diego, occupying, with his incompetent son Moritz, the home. Two of his other children, Ellen and Walter, were at the time of his death and continue to be residents of San Diego. The other children have resided and continue to reside in the San Joaquin Valley. It appears that for some time prior to his death the decedent had been afflicted with heart and pancreas disorders and was subject to senile dementia; that on December 4, 1935, that is, some 17 days before his death, he made a will, in which he left the bulk of his estate to his daughter, Ellen, but a small fractional share to his said four minor grandchildren. The whole estate was of the appraised value of approximately $24,000. Ellen Weisbrod having filed the will with her petition for its admission to probate, notice was in due time sent to the other heirs at law, in consequence of which David came to San Diego and there, after being in court on the day that it was admitted to probate, expressed his dissatisfaction with the dispositions made in the will and doubt of its validity, whereupon, according to David's testimony, Ellen said that she felt that after the debts were paid "we should all share and share alike and be congenial and happy". Thereupon, according to David's testimony, at his suggestion that she write the other heirs of her intentions, Ellen wrote to her brother George at Newman, California, a letter under date of January 17, 1936, containing the following:

"Well, brother I suppose you are wondering about how thing's have been fixed. If dad left a will. Well here how thing's are. Dad had a will made out by an attorney name (Steiner) He has been dad's lawyer for about (5 years) so he put some faith and trust in this lawyer. So about (3wks) before he passed, he had this last will made out. In this lawyer's office. I and Walt was there also, and he appointed me by law in the will, the executrix of the estate. Now we

are going to have an appraiser to come out here to appraise the place. And it is going to be sold. So we can have it all together in the estate. Then each heir can share and share alike. Of course there is outstanding debts, such as Shannon and Johnson Saum. And the Dr. that took care of dad during his last illness. All those debts have to be took care of. And they have to be paid from the Estate. And after they are all paid. Then the other will be divided among the living heir's and there is six of us. Now, George, I hope this proved satisfactory with you. Because I am going to play white. I will close now hoping to hear from you soon I remain as ever your loving sister.

"Ellen."

At the same time Ellen wrote a letter to her sister, Mrs. Foster, containing substantially the same matter. Thereupon David, after consultation with George and Mrs. Foster wrote Ellen under date February 17, 1936, a letter containing the following:

"We have been advised to write to you pertainting the estate of which you are executrix. We do not wish to make any changes in the executing but we want legal assurance we will share and share alike, therefore, we ask you to see your attorney and have him draw a letter to that effect and give each of the heirs a certified copy of the same. . . . I trust you will give me an immediate reply and look on this in a broad minded way as I feel you will. . . . "

In what she said to her brother David upon his visit to San Diego and in writing the two letters of January 17, 1936, above referred to, Ellen had not consulted her attorney, who, after talking with her and learning of these occurrences, wrote each of the plaintiffs and appellants a letter under date February 25, 1936, the body of which is in the words and figures following:

"Miss Ellen Weisbrod tells me that she has been importuned to prepare and execute some sort of a document running in favor of her brothers and sisters to the effect that she intends to share sooner or later with them or part of them the estate which she lately inherited from her father. She tells me also that she has prepared and forwarded a letter intimating that her intention was to ultimately share this estate with certain of her brothers and sisters.

"Since that time she has discussed this matter with me and has asked that I advise you, as I am advising all of your brothers and sisters, that she is not now sure exactly what she intends to do when the probate period is ended and she does not want to be placed in the position of having you or anyone else say that you relied upon any offers or promises made by her to distribute any or all of her father's estate, and thereby be deprived to now object to her probate of his estate or of his will.

"Hence, if you have any contest to present with respect to this last will of John M. Weisbrod or with her management of it, I suggest that you advise her with relation thereto, or take such steps as you may deem proper, because it appears to her that she is going to be involved in family complications unless this particular action is taken by her at this time.

"I write this letter to you because if Miss Weisbrod desires to change her mind, or if she has already changed her mind, or if she in the future desires to change her mind and divide this other than equally between her brothers and sisters or if she is not going to divide it at all, you will not be deprived of your chance to make whatever legal objections you think you have at the present time."

When this letter was received David, George and Mrs. Foster came together to San Diego and interviewed Ellen, who, according to David's account of the matter, said in substance that she intended, if they "would go away and leave her alone and not interfere with law or anything", to carry out her intentions expressed in her earlier interview with David and in her letters of January 17th. Appellants, however, did not let the matter rest there, for all four then called on Ellen's attorney. According to the account of the interview given by the latter, George stated "that he wanted some legal assurance that he was going to profit from the estate"; to which the attorney replied that "that was the reason the letter was sent, so that they would not be illusioned one bit or be deprived of any right to make any objection they wanted to make to the probate" of their father's will. He says, in substance, that he went on to tell them that Ellen's attitude was due to certain annoyances that she had received from other members of the family, that they could have recourse to the law to obtain any legal rights they claimed to

have, that if they wanted consideration at Ellen's hands their best course was to treat her right, that he would not advise her to give them any assurance about any division of the property.

David Weisbrod testified that on the occasion of this visit of the three appellants referred to, to San Diego, in the discussion at the house prior to going to the attorney's office, Ellen stated that she knew nothing of the letter which her counsel had written and had not authorized it; that in the course of the conversation with the attorney the latter said in substance that if the other heirs were nice to Ellen she would be nice to them, or words to that effect. He fixed the date of this visit as about March 13 or 14, 1936.

Mrs. Foster testified that after David, George and she had arrived at San Diego on this visit they talked to Ellen, who said that she wanted the estate divided "share and share alike" and that she disclaimed any knowledge of the letter written by her counsel. Mrs. Foster's testimony is very meager about what was said by Ellen's attorney on the occasion of the visit to his office, but she does quote him as having said "if you would go away and leave your sister alone and be good to her I think she will be likewise".

It was stipulated that in a former proceeding Ellen had testified that when she wrote the letters of January 17, 1936, it was her purpose to have an equal division made of the property of the estate.

The present suit is one for declaratory relief in which the plaintiffs and appellants alleged an agreement in the terms of Ellen's letters of January 17, 1936, above referred to in consideration of their refraining from a contest of the will and avoidance of litigation and dissension with Ellen, and sought a judgment declaring their rights in the estate under what they claim to have been a trust created by Ellen, "or otherwise", under the terms of her said letter, in their favor. Ellen Weisbrod answered the complaint, denying the existence of any contract with the appellants; denying that any agreement was ever made for the avoidance of litigation or controversy; denying that such litigation or controversy was avoided; denying any agreement to distribute the estate of the father in any other manner than as provided by his will and the law; alleging the institution of a contest by Moritz Weisbrod and a judgment in that proceeding against the

contestant; alleging that there was no consideration for anything said in Ellen's said letters; and setting up that on being informed of her legal rights Ellen caused her attorney to write the letter hereinbefore mentioned as written by him.

After the trial of the case the court found, *inter alia,* that Ellen's letter was neither intended nor received as a contract or agreement; that it was without consideration; that none of the appellants paid any consideration, made any promise or suffered any prejudice in return for its having been written, or in return for any intention therein expressed or in reliance thereon; that it was a mere voluntary expression of intention and withdrawn by the aforesaid letter of Ellen's counsel; that no proceedings were had in the estate of the father nor abstained from by reason of any agreement on Ellen's part. The court concluded, as a matter of law, that Ellen had made no assignment or contract with any of appellants respecting the distribution of their father's estate, and rendered judgment accordingly that Ellen and the minor children were entitled to receive distribution under the will of John M. Weisbrod, and that none of the appellants had acquired any right in the estate through any agreement or assignment from Ellen. From this judgment the present appeal is prosecuted.

Appellants' argument, as we understand it, runs as follows: That Ellen Weisbrod's letters of January 17, 1936, amount to written instruments entering into certain engagements with appellants; that being written instruments, they afford, under sections 1614 and 1615 of the Civil Code a presumption that there was consideration for them; that it is true that the complaint alleges the consideration to have been that appellants would make.no objection to the probate of their father's will or to the issuance of letters to Ellen and the mutual benefit of all parties in interest consequent upon the avoidance of litigation and dissension between brothers and sisters, as well as the saving of costs and expenses incident to such litigation; but that these allegations as to the consideration for Ellen's promises were surplusage and therefore it was not necessary for appellants to prove them, but that the presumption of consideration above referred to resulting from the mere existence of the written instruments was all-sufficient, even if proof of the specific

considerations alleged wholly failed; that the averment in the answer that there was no consideration for the promises alleged is a mere conclusion of law and raises no issue; that by reason of the premises the trial court was, as a matter of law, bound to decide that the promises alleged were made upon due and sufficient consideration and to enforce the asserted contract accordingly.

These contentions appear, even at first sight, too labored and artificial to be sound. They assume, at the outset, that Ellen's letters are written instruments within the meaning of the code sections referred to. We do not think they are. There is no question that the letters which she, on January 17, 1936, addressed to her brother George and to her sister Mrs. Foster, as well as her oral expression made shortly theretofore to her brother David were expressive of her feelings and intentions as they then were. Manifestly, however, neither these letters nor her oral expressions amounted to any completed contract, nor were the letters written instruments, complete as such in themselves, which could be said under sections 1614 and 1615 of the Civil Code to be presumptive evidence of any consideration having passed from her brothers and sister or any of them to herself. The term "instrument in writing" is said in *State* v. *Heaton*, 17 Wash. 310 [49 Pac. 493], referring to Bouvier's Law Dictionary, to include "bills, bonds, conveyances, leases, mortgages, promissory notes, and wills, but scarcely accounts, ordinary letters, or memoranda". In Black's Law Dictionary an "instrument" is defined as "a written document; a formal or legal document in writing, such as a contract, deed, will, bond or lease", citing, *inter alia, Cardenas* v. *Miller,* 108 Cal. 250 [41 Pac. 472, 49 Am. St. Rep. 84], where it is said (p. 256): "The term 'instrument', in its broad sense, includes formal or legal documents in writing, including contracts, deeds, wills, bonds, leases, mortgages, etc." The meaning of the expression "instrument" was also discussed in *People* v. *Fraser,* 23 Cal. App. 82, 84 [137 Pac. 276], where it was said that:

"Generally the term 'instrument' as applied to documents necessarily imports a paper writing; but every paper writing is not necessarily an instrument within the settled statutory meaning of the term. With reference to writings the term 'instrument' as employed in our statutes has been de-

fined to mean an agreement expressed in writing, signed and delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty.''

If, then, Ellen Weisbrod's letters fall short of being written instruments, within the meaning of the code sections referred to and, therefore, do not in themselves import consideration, appellants are hardly in a position now to contend that their own very specific allegations contained in their complaint as to what they claim the consideration to have been, can, under such authorities as *Cordes* v. *Harding,* 27 Cal. App. 474 [150 Pac. 650], and *Hualde Ranch Co.* v. *Beebe,* 3 Cal. App. (2d) 592, 593 [40 Pac. (2d) 545], on which they rely, be mere surplusage and open the way for a claim that they have, by pleading the alleged *instrument,* as a matter of law *pleaded* some other, further and different *consideration* from that specifically alleged in their complaint, and have also *proved* such unspecified but distinct consideration through the potent agency of the presumption invoked. Neither do we see that the citations of *Peak* v. *Republic Truck Co.,* 194 Cal. 782, 790 [230 Pac. 948], and *Bashford* v. *Levy & J. Zentner Co.,* 123 Cal. App. 204, 210 [11 Pac. (2d) 51], to the effect that allegations in a complaint inconsistent with the text of a writing set forth *in haec verba* are surplusage, have any application to this case, since here appellants' allegations as to the alleged consideration for what they claim that Ellen promised in her letters, had they been able to prove it, would have involved no inconsistency with the terms of the pleaded letters. If, then, appellants' allegations as to what was the consideration cannot be disregarded as surplusage, manifestly respondents' specific denials with respect to *that* consideration cannot be disregarded either, as appellants would have us do, for the purpose of requiring respondents to rely on the general allegation of no consideration, also contained in their answer, which general allegation appellants would, as a further step, then have us hold to be a nullity upon the authority of such cases as *Gushee* v. *Leavitt,* 5 Cal. 160 [63 Am. Dec. 116], a line of authorities itself much weakened, as to denials of consideration, by the expression of the Supreme Court in denying a hearing in *Rivera* v. *Cappa,* 29 Cal. App. 496, 498, 499 [156 Pac. 1016].

(See, also, opinion of the Supreme Court in denying a hearing in *Drovers' Nat. Bank* v. *Browne,* 88 Cal. App. 716, 723, 724 [264 Pac. 265].)

We think, then, that the trial court had before it sufficient issues to warrant a consideration of the evidence with respect to appellants' claim of consideration for the alleged contract which appellants seek to establish, and respondents' claim of an absence of consideration for it. It seems to us futile in this case to discuss further whether there was any presumption of consideration for such a promise as appellants claim that Ellen Weisbrod made to them in her letters. The actual situation was fully before the trial court and in these circumstances it was not required to decide the case upon the basis of any mere disputable presumption, had there been one.

All in all we find no reason for disagreement with that court's findings or action. There is practically no dispute about the facts. The question is not what occurred, but of the legal effect of what occurred. This will had already been admitted to probate and letters issued. It was still, of course, subject to contest. The utmost that could with plausibility be contended as respects Ellen Weisbrod's letters is that they were in the nature of offers. Instead of accepting them as such, however, what the plaintiffs (other than Moritz's guardian) actually did, through David, was to write Ellen demanding something other and different from her letters, to wit, a formal written communication to be prepared by her attorney precisely amounting to an assignment to them of shares equal to her own in their father's estate. This was tantamount to treating her letters and oral expressions as something merely tentative and asking instead something which they never got, and their demand for which provoked the very definitive reply from Ellen's counsel. Whether Ellen had in terms authorized her counsel's letter or not, she in effect acquiesced in it, for, though she was present, as we saw, with three of appellants at the conference at her counsel's office, she never did furnish appellants with the sort of a writing that they demanded. In view of all this we think that the trial court would have been entirely justified in concluding, as it probably did, that David, George and Mrs. Foster were made aware that she would not furnish it in the teeth of her counsel's advice. So far as appears, they

went home without any further attempt to get it and we think the court justified in finding that any offer Ellen may have made was, in effect, withdrawn. In these circumstances we do not think that any contract at all can be said to have been made or that appellants can be treated as having been in any way bound to themselves refrain from any will contest or other legal action that they might have deemed to their advantage. They still had ample time in which to contest the will if they wished, and so far as Moritz's guardian is concerned, it appears that such a contest was actually instituted. ■■■ There was no mutuality of agreement and it is elementary that without mutuality no specific performance of any asserted agreement can be decreed. None of the elements of an estoppel are present.

The evidence, in our view, supports the trial court's conclusion that Ellen Weisbrod is under no legal obligation which requires her to make any particular disposition of the property devised and bequeathed to her under the father's will.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.