[Civ. No. 4922. Fourth Dist. Apr. 1, 1955.]

RIDGWAY AUDIT, INC. (a Corporation), Appellant, v. OBERLIN, INC. (a Corporation) et al., Respondents.

110

Ralph Robinson for Appellant.

Rowell, Lamberson & Thomas for Respondents.

BARNARD, P. J.—This is an action to recover a payment alleged to be due under a written contract. On May 8, 1951, the plaintiff and defendant signed a contract authorizing the plaintiff to make certain "audits" at two stores operated by the defendant. These so-called audits were to consist of sending in shoppers to make pretended purchases for the purpose of testing the efficiency and honesty of defendant's employees. So far as material here, the contract provided that the plaintiff agreed to investigate and report on the conditions found with respect to the efficiency and honesty of the employees, to talk in a proper manner "to any person shown to be dishonest," and to return the merchandise thus purchased. The defendant agreed to refund the purchase price of such merchandise, and "Upon the completion of service, pay Ridgway Audit, Inc., a fee of $100 per audit per store and fifty percent of all recoveries made; whether recovery is made at time of audit or at a later date."

This action was brought on January 23, 1953. A copy of the contract was attached to the complaint, and it was alleged that "the plaintiff entered into the performance of its duties in accordance therewith, and did discover thefts on the part of one employee in an amount admitted by said employee to be in the sum of $8736.00"; that said sum "has been recovered or recaptured by the defendant"; and that the defendant is indebted to the plaintiff in the sum of $4,368. These allegations were denied by the defendant.

At the trial it developed that the defendant had purchased a policy of fidelity insurance, under the terms of which a bonding company had guaranteed it against loss by theft on the part of its employees; that a series of thefts by one employee had occurred; and that late in 1952 the bonding company paid $8,432.80 to the defendant in payment of its liability under the bond. The plaintiff completed an audit on April 28, 1952, and a day or two later submitted a report to the defendant. This report contained no suggestion of dishonesty or theft on the part of any employee.

On May 1, 1952, Mr. Oberlin had a conversation with Mr. Sans, a member of plaintiff's organization, in which he told Sans that he had definite information of the dishonesty of one of his employees and asked Sans to interrogate this

employee with reference thereto. Oberlin had acquired this information from the manager of one of defendant's stores; and prior to that time the defendant had received no information from the plaintiff that they had discovered this employee to be dishonest or voicing any suspicion of such a fact. Later that day, a meeting was held at which Mr. Sans, Mr. Oberlin, the defendant's accountant, and the employee in question were present. Mr. Sans questioned this employee, who confessed, and a representative of the bonding company was called in. The employee signed a written statement admitting that during the preceding 728 days he had stolen a total amount of $8,736. Mr. Sans later went with Mr. Oberlin to the district attorney's office, where Mr. Oberlin made a complaint charging this employee with grant theft. The employee fled and went to Mexico, and the bonding company later paid the defendant $8,432.80. The district attorney's office recovered $200 in merchandise from this employee's home, and the defendant retained $200 of pay which would otherwise have been due to this employee. Mr. Oberlin testified that he had told a representative of the plaintiff that the matter of paying them half of whatever was recovered from the bonding company "would be presented to my directors and that he would be paid." This evidence was offered and admitted solely "as evidence of the interpretation placed up the contract by this witness," and not as evidence of "an independent obligation." The only other evidence in this connection was Oberlin's further testimony that when the contract was signed they discussed this provision and he was told that "any thefts that they have discovered, anything like that, that they would have 50 percent title to it."

The court found that it was not true that the plaintiff discovered that an employee of the defendant was committing thefts from the defendant; that it was not true that the $8,432.80 paid by the bonding company, or any part thereof, was a recovery within the meaning of the contract entered into by the parties; and that it is not true that the defendant is indebted to the plaintiff in any sum except the sum of $200, being one-half of the amount actually recovered from the defaulting employee. Judgment was accordingly entered in favor of the plaintiff for $200, without costs, and the plaintiff has appealed from that judgment. As the appellant states, the entire question presented is as to the interpretation of this contract with respect to the meaning of the clause above quoted.

The appellant contends that the court erred in holding that a recovery, within the meaning of the contract, was limited to what was regained from the defaulting employee; that while the word "recovery" commonly means the regaining of that which has been lost or taken away, it does not necessarily imply that the person had previously owned or been in possession of that particular property; that the payment by the bonding company was a recovery within the meaning of this contract; that the contract was so interpreted by the parties; and that the respondent, by accepting the funds from the bonding company, and in effect having sold its claim against the employee to the bonding company, has made it impossible for appellant to recover from the employee. The cases cited, *American Surety Co. of New York* v. *Meadville Lodge,* 114 Pa.Super. 451 [174 A. 591] ; *Cordes* v. *Harding,* 27 Cal.App. 474 [150 P. 650] ; *In re Estate of Stockton,* 97 Cal.App. 157 [274 P. 1022] ; and *Monterey County* v. *Cushing,* 83 Cal. 507 [23 P. 700], do not support these contentions as applied to the facts of this case.

This contract provides for certain services to be performed by the appellant, including a report of any dishonesty on the part of an employee which might be found. It further provided for the payment of a fixed fee upon the completion of the audit, plus 50 per cent of all recoveries made. This clearly indicates an intention that the 50 per cent should relate to recoveries made by the appellant and resulting from its discovery of any such dishonesty, and its success in getting some form of restitution from the dishonest employee. That this was the intention is confirmed by the clause which follows : "whether recovery is made at time of audit or at a later date." This strongly implies that the recoveries referred to are those resulting from the services of the appellant even though they may actually be made after the audit is completed. This meaning of the contract was largely recognized in the complaint, which alleged that in performing its duties in accordance with the contract the appellant discovered thefts on the part of the employee in question.

There was a failure to prove the allegation that the appellant discovered these thefts, and there was no proof that the payment made by the bonding company resulted from any services rendered by the appellant. While the appellant did talk to the employee shown to be dishonest, as required by the contract, the payment by the bonding company resulted from its separate contract with the respondent and not from

this conversation. This payment by the bonding company was not a recovery within the meaning of the contract, but was a reimbursement for the loss suffered by the respondent, which was made pursuant to a contract of indemnity between the bonding company and the respondent, and paid for by the respondent. It would be unreasonable to interpret the agreement here in question as entitling the appellant to share in the benefits of this separate indemnity contract, to which it was not a party, and where it had nothing to do with the discovery of the thefts covered thereby. The trial court's interpretation of this contract is not only a reasonable one, but it appears to us to be more reasonable than the interpretation for which the appellant contends. We see nothing in the fact that the bonding company may now have a right of subrogation, with respect to any rights the respondent would have had against the defaulting employee, which would require a reversal of this judgment.

If it be assumed that there is any ambiguity in this contract, the result is the same. The evidence was not sufficient to require a finding that it was the intent of the parties, at the time the contract was entered into, that such a payment by the bonding company was to be considered as a recovery within the meaning of the contract. The only direct evidence, with respect to the original intention of the parties, was to the effect that the appellant was to have 50 per cent of any recoveries it made from thefts which it discovered. The other testimony, to the effect that there was a subsequent provisional promise to pay, was merely conflicting at best. In any event, the evidence supports the findings and judgment.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.