## NORTHERN PAC. RY. CO. v. CLARKE.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1901.)

### No. 579.

ATTORNEY AND CLIENT—COMPENSATION—QUESTION FOR JURY.

The evidence in an action against a railway company to recover for legal services rendered by an attorney as special counsel was contradictory as to the authority of the company's division counsel to employ him, and as to whether his services were to be without compensation; but his bill for expenses incurred in the cases in which the services were rendered was approved by the general counsel, who had charge of the appointment of all the company's attorneys. The employment and agency of the division counsel covered the company's litigation in an adjoining state, but, as no member of the firm had been admitted to the bar in that state, they could not render the immediate services required, and they had previously employed special counsel in other cases, which employment had been ratified by the general counsel, who always appointed local or special counsel on their recommendations. *Held*, that the evidence was sufficient to go to the jury on the question whether the attorney was employed by the company.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

Daniel J. Crowley, Benjamin S. Grosscup, and Stephens & Bunn, for plaintiff in error.

Graves & Graves, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This was an action by Charles W. Clarke against the Northern Pacific Railway Company upon a claim assigned to him by William T. Stoll for services rendered the railway company as attorney at law in certain damage cases in the month of November, 1897. It was alleged that the services were of the reasonable value of $5,000. The case was tried before the court

and a jury, and resulted in a judgment in favor of the plaintiff for $500. At the close of the testimony, counsel for the defendant moved the court to instruct the jury to find a verdict for the defendant, for the reason that there was no testimony showing or tending to show that the employment of Stoll, if he was in fact employed, was by the authority of the defendant; that Stoll had notice of such want of authority when he rendered the services mentioned in the complaint; and that there was no testimony showing or tending to show that the employment of Stoll was ever ratified or consented to by the defendant. The court refused to give this instruction, and this refusal is the error assigned and relied upon by the plaintiff in error for a reversal of the judgment.

The only question at issue is whether, upon all the evidence in the case, it was the duty of the court to determine as a matter of law that the judgment should have been in favor of the defendant. In passing upon a motion to direct a verdict, the duty of the trial judge is not to weigh the evidence in the case, as it is in passing upon a motion for a new trial, but to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, to determine whether or not, under the law, a verdict might be found for the party having the burden of proof. If not, he should, upon the ground that the evidence is insufficient in law, direct a verdict against that party. Railway Co. v. Lowery, 43 U. S. App. 408, 432, 20 C. C. A. 596, 74 Fed. 463, 477, followed in this court in Cox v. Robinson, 48 U. S. App. 388, 399, 27 C. C. A. 120, 82 Fed. 277, 282, 283. The evidence in the record tending to establish plaintiff's case may be summarized as follows: C. W. Bunn was the general counsel of the Northern Pacific Railway Company at St. Paul, Minn., and as such counsel he had charge of all the legal business of the company, and the appointment and employment of all its attorneys, and had occupied that position continuously since the formation of the company in 1896. The firm of Dudley, Bunn & Dudley were the attorneys of the company at Spokane, in the state of Washington, during the year 1897. Their employment covered the litigation and counsel of the company pertaining to law matters in the eastern part of Washington and the state of Idaho. William T. Stoll, in November, 1897, was a member of the Washington and Idaho bar, and had been practicing since 1882, having an office at Spokane, Wash. There were at that time pending in one of the state courts of Idaho six cases against the Northern Pacific Railway Company, known as the "Ross Crossing Cases," brought to recover damages sustained by the plaintiffs by reason of the death of one person and injury to three others at a railroad crossing. The damages claimed in these cases amounted to about $58,000, and at the time of the alleged employment of Stoll by the company on November 20, 1897, default had been entered in favor of the plaintiffs in four of the cases, and in the other two default was entered before answers had been filed, on November 21, 1897. John M. Bunn, of the law firm of Dudley, Bunn & Dudley, division counsel of the railway company, called upon Stoll in his office on Sunday, November 20, 1897,

about these cases. Stoll testified that Bunn had the papers in the cases, and represented that default judgments had been entered in all the cases for $58,000; that neither he nor either of his partners was a member of the bar of Idaho, and he wanted to employ Stoll to take charge of the cases. In the course of this conversation, Stoll asked Bunn what authority he had to employ counsel. Bunn replied that his brother was general counsel, and that he had always requested him to take charge of litigation out there, and to do anything that was necessary to protect the interests of the company. Stoll thereupon prepared motions to set aside the defaults and affidavits in support of the motions, and, with a stenographer, proceeded on Monday, November 21, 1897, to Rathdrum, in Idaho, where these cases were pending, and there took such proceedings in court that thereafter the defaults were set aside, and answers filed. He also at that time received a proposition from plaintiffs' attorney to settle all the cases for $6,000. This proposition was afterwards accepted by the company, and about December 2, 1897, the cases were settled. On December 17, 1897, John M. Bunn transmitted by letter to C. W. Bunn, the general counsel, two vouchers connected with the cases, —one for $4.85, in favor of E. C. McDonald, attorney, Spokane; and the other for $29.50, in favor of William T. Stoll, attorney, Spokane. In this letter John M. Bunn, in referring to these vouchers, says:

"This voucher of Stoll's is for expenses incurred on three different trips made to Rathdrum in connection with the Ross Crossing personal injury cases. You will understand the reasons for Stoll's connection with these cases. I am satisfied that Stoll is the only man who could have done what he did for the benefit of the company in this matter. McDonald was taken along with Stoll as a stenographer and assistant. Please approve these vouchers for payment in the usual course."

Stoll testified that he received a letter from C. W. Bunn, the general counsel, inclosing vouchers in payment of the expense bill mentioned in the letter of John M. Bunn. This letter from C. W. Bunn had been lost, but Stoll testified as to its substance, and says that it contained an expression of the fact that he was pleased with what had been done by Stoll in the matter. C. W. Bunn testified that division counsel of the road had no authority to employ and appoint local counsel, but that they were asked to recommend appointments for local counsel; that in 99 cases out of 100 he took their recommendation; that he took their recommendations almost implicitly. It appears that in September or October, 1897, John M. Bunn received information from the general counsel of the company that there was likely to be a change in the division counsel at Spokane. He was also informed that, if he could form a satisfactory firm, it would succeed to the business on January 1, 1898. John M. Bunn communicated to Stoll the terms upon which the firm of Dudley, Bunn & Dudley were doing the business of the company, and negotiations resulted in the formation of a law partnership composed of Stoll, Stephens, Bunn, and McDonald, which did in fact become division counsel of the company at Spokane, succeeding to the employment of Dudley, Bunn & Dudley, on January 1, 1898. This employment continued until August 1, 1898. The testimony on the part of

the defense tended to show that Stoll's services in the Ross Crossing cases were rendered voluntarily, and without charge, in view of the formation of the new firm, and the fact that this new firm was about to become division counsel at Spokane. This testimony was, however, contradicted by Stoll, who testified that he had business enough of his own to attend to; that he had a pretty extensive practice, that occupied him and his partner pretty much all the time, and was quite remunerative; that he had no time to go off to Rathdrum to try other people's cases for accommodation.

It is elementary law that an attorney in a particular case has no general authority, by virtue of his retainer, to employ other counsel, either by way of substitution or as assistant or associate counsel, at the expense of his client. But where the employment of the original attorney is general in its character, and amounts to an agency in the legal business of the client. or where the authority or the subsequent assent on the part of the client to the employment of additional counsel can fairly be inferred from the facts of the case, the client will be bound by such employment. Briggs v. Georgia, 10 Vt. 68; Weeks, Attys. (2d Ed.) § 246. The evidence in the case is contradictory as to the authority of the division counsel to employ counsel, and also as to the assent of the general counsel to the employment of Stoll. It is also contradictory as to whether Stoll's services were to be without compensation. But the question here is whether the testimony, together with all the inferences reasonably and justifiably to be drawn therefrom, tended to establish facts upon which the liability of the defendant for his employment follows as a legal consequence. The employment and agency of the division counsel of the defendant at Spokane covered the litigation and counsel of the company pertaining to law matters in the eastern part of Washington and the state of Idaho. but, as no member of the firm had been admitted to the bar of Idaho, the firm was not in a position to render the immediate services required in the defense of the actions in question in that state. The situation was one of emergency, and the best interest of the company was to be promoted by the employment of Stoll. The division counsel had previously employed special counsel in Idaho, and the employment was confirmed by the general counsel. John M. Bunn, one of the special counsel, represented to Stoll that the general counsel had always intrusted him to take charge of litigation in that territory, and do anything to protect the interests of the company. But, assuming that this testimony on the part of the agent whose authority is in question was not sufficient to bind the principal. still the authority appears to be otherwise inferable from the previous acts of the general counsel, and the situation was one in which that authority was necessary and properly exercised for the benefit of the company. The evidence that the general counsel assented to the employment of Stoll is also inferable from the correspondence and the action of the general counsel in approving the bill of expenses incurred by Stoll. We think the evidence was sufficient to be submitted to the jury. Judgment affirmed.