[Civ. No. 4060. First Appellate District, Division One.—June 30, 1922.]

## T. E. K. CORMAC et al., Appellants, v. MARGARET MURPHY, Respondent.

[1] ATTORNEY AND CLIENT—AUTHORITY TO EMPLOY ASSISTANTS.—An attorney has no general authority by virtue of his retainer to employ counsel or assistants at the expense of his client without previous authority or assent of the client.

[2] ID.—ACTION FOR LEGAL SERVICES—AUTHORITY TO EMPLOY PLAINTIFFS—BURDEN OF PROOF.—In an action brought to recover a sum of money alleged to be due plaintiffs for legal services rendered by them in the settlement of the estate of the deceased son of defendant, the burden is upon the plaintiffs to show that the attorney at whose solicitation the services were performed was authorized by defendant to employ plaintiffs, and it is not incumbent upon the defendant to show affirmatively that such authority was not in fact given.

[3] ID. — ACCEPTANCE OF BENEFITS — KNOWLEDGE OF EMPLOYMENT — ESTOPPEL.—The rule that "a voluntary acceptance of the benefits of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known to the person accepting," is not available to attorneys who have rendered legal services in behalf of an heir at the request of another attorney who was not authorized to employ them and such heir never knew and was not in a position to know of their employment or of the services they were performing in the matter of the settlement of the estate.

[4] ID. — PRESUMPTION OF EMPLOYMENT — LACK OF AUTHORITY — EVIDENCE.—An attorney's contract of employment must be proved like any other contract of employment, and if there is shown a lack of authority on the part of one of the contracting parties there is no valid contract.

---

1. Power of attorney at law to employ assistant at expense of client, notes, 15 Ann. Cas. 1180; L. R. A. 1918F, 15.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wal J. Tuska for Appellants.

Sapiro & Levy for Respondent.

KNIGHT, J., *pro tem.*:—This is an appeal by plaintiffs from a judgment rendered in favor of the defendant in an action brought to recover the sum of five hundred dollars alleged to be due plaintiffs for legal services rendered by them in connection with the settlement of the estate of the deceased son of defendant.

On September 10, 1920, plaintiffs, who are practicing attorneys at law, with offices located in San Francisco, received a letter dated August 19, 1920, from Patrick O'Leary, a solicitor residing at Bantry, county of Cork, Ireland, concerning the estate of Jeremiah J. Murphy, deceased, which estate was then pending probate in the superior court of the city and county of San Francisco. In that letter it was, among other things, stated that Murphy died in San Francisco, leaving an estate, consisting of money and shares of stock of undetermined value; that Murphy was survived by a mother and brother residing in Ireland, for whom O'Leary was acting, and a sister residing in the United States; that the public administrator had taken charge of the assets of said estate. Continuing the letter said: "What the money and shares amount to I do not know, but I want you to make inquiries and let me know, and if you are open to act in the matter for the deceased's next of kin in this country, you are hereby empowered to do so, and in case you require a Power of Attorney from them you can let me have Form and I will have it executed by them. In the meantime, I will be pleased to hear from you as to what you think the estate is worth," etc. Plaintiffs replied to that letter on the day on which it was received to the effect that the matters referred to in said letter would receive their immediate attention. They also sent inclosed in their reply a form of

power of attorney, with the request that it be executed pursuant to the printed instructions inclosed; also forms of interrogatories for the purpose of establishing heirship.

On September 11, 1920, the day following the receipt of the O'Leary letter, plaintiffs served and filed in the estate of Murphy a notice of appearance in accordance with the provisions of section 1380 of the Code of Civil Procedure. They had, in the meantime, investigated the record and files of said estate and had made report thereof to O'Leary. Later they sought and located in Oakland a cousin of the deceased, by whom they expected to establish heirship. This witness was produced and examined by plaintiffs on October 28, 1920, at the time the petition for the final distribution of said estate was heard and granted. During the course of the administration of said estate the public administrator recognized and dealt with plaintiffs as the attorneys representing the heirs residing in Ireland. Other than the letters above mentioned the record does not disclose that there was any further correspondence between the parties. The form of the power of attorney and the printed interrogatories which were mailed by plaintiffs to O'Leary as above stated were never used nor were they returned to plaintiffs. However, on October 29, 1920, the defendant Margaret Murphy, as sole heir to the residue of said estate, which consisted of approximately thirteen hundred dollars in cash, executed a power of attorney appointing Eugene W. Levy as her attorney in fact. Said power of attorney was mailed to Levy from Dublin, Ireland, on November 6, 1920, and was later filed as a part of the record of said estate. The public administrator refused to pay the distributive share of the defendant to Levy, however, unless plaintiffs were paid for their services. Levy declined to approve such payment, and plaintiffs thereupon commenced this action and levied upon the distributive share of Margaret Murphy remaining in the hands of the public administrator.

Plaintiffs claim that they are entitled to compensation for their services, upon the ground that the O'Leary letter dated August 19, 1920, constituted a valid contract of employment and that "coming from one solicitor to another—especially from a distant country—justifies the solicitor appealed to to enter upon the performance of all

duties in connection with the case his services are sought in.''

There is an entire absence of proof, however, showing that O'Leary had any authority from Margaret Murphy to employ plaintiffs or that she expressly or impliedly assented thereto. Under such circumstances the defendant is not bound, we think, by the contents of the O'Leary letter. [1] It has been repeatedly and consistently held that an attorney has no general authority by virtue of his retainer to employ counsel or assistants at the expense of his client without previous authority or assent of the client. (*Porter* v. *Elizalde,* 125 Cal. 204 [57 Pac. 899]; *Davis* v. *Mackay,* 50 Cal. App. 251 [194 Pac. 738]; *Northern Pac. Ry. Co.* v. *Clarke,* 106 Fed. 794 [45 C. C. A. 635]; *Paddock* v. *Colby,* 18 Vt. 485; *Young* v. *Crawford,* 23 Mo. App. 432; Mechem on Agency, sec. 813; Weeks on Attorneys, sec. 246.) The evidence on that point, although somewhat meager, shows, we believe, quite the contrary. From a letter written on February 21, 1921, by one MacGrath, solicitor and land agent of Dublin, Ireland, to Levy and read into the record at the request of plaintiffs, it would appear that a son of Margaret Murphy merely requested O'Leary to obtain information concerning his brother's estate, for which service O'Leary was paid a nominal fee. Such was apparently the extent of O'Leary's authority. [2] It was not incumbent upon the defendant, as contended by plaintiffs, to show affirmatively that such authority was not in fact given. The burden was upon the plaintiffs to show that it was, which, as above stated, they failed to do.

Respondent contends that the letter itself did not constitute a contract for the employment of plaintiffs as attorneys to represent defendant in the settlement of said estate, but that it was merely a request for certain information concerning said estate, and that the employment of plaintiffs was necessarily incomplete until the power of attorney mentioned in the letter was executed and re-turned to plaintiffs, which, as we have already seen, was not done. Whether or not the effect of the O'Leary letter and the reply thereto by plaintiffs was sufficient in law to constitute a valid contract of employment makes little difference here for the reason that O'Leary is not the party

sought to be charged. Margaret Murphy is the party sued and as has already been pointed out there is no evidence in the record to show that she ever authorized the employment of plaintiffs. Therefore, upon that ground she is not liable for the payment of plaintiffs' services.

[3] The second point urged by plaintiffs is that defendant is liable upon the theory that "a voluntary acceptance of the benefits of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known to the person accepting." (Sec. 1589, Civ. Code.)

It is clear to us, however, that this rule is not available to plaintiffs for the simple reason that there was no evidence offered or received showing that Margaret Murphy ever knew or was in a position to know of the employment of plaintiffs or of the services they were performing in the matter of the settlement of said estate.

In the case of *Porter* v. *Elizalde, supra*, it is said: "It is undoubtedly in general the rule that when one knows that another is rendering him service, and tacitly assents thereto, if nothing more appears the law will imply a provision on his part to pay for such services. The rule is not uniform or absolute, however, but will be recognized or refused according to the circumstances of the particular case in which it is invoked (see *Moulin* v. *Columbet*, 22 Cal. 508), and when it appears that the services were rendered under an expressed employment by an agent, or by a third person who assumed to act in the interest of the one in whose behalf they were rendered the authority of that person and the terms of the employment become important factors in determining the liability or the right of recovery. The mere silence of the party will not be held to constitute such assent or acquiescence in the acts of the agents as to amount to a ratification or adoption of these acts, without also considering the circumstances under which the silence existed."

The evidence here shows that it required three weeks for the letter from O'Leary to plaintiffs to reach San Francisco. Within six weeks after the letter arrived final distribution of the estate was granted. Mrs. Murphy was a very old lady, living eighty miles inland, in a disturbed part of Ireland, into which the railroads were not operat-

ing, and it appears that it was a matter of risking one's life to make a trip into that part of the country. It is quite evident, we think, from these, and other circumstances appearing from the record, that Mrs. Murphy was in total ignorance of the transactions that were taking place in the settlement of her son's estate. That being so, she cannot be held liable for the payment of plaintiffs' services under the rule contended for.

Appellants seem to lay stress upon the fact that the defendant failed to show a revocation of the proposition of employment made in O'Leary's letter, and it is argued that, in the absence of such revocation, a presumption arises that O'Leary was authorized to employ the plaintiffs. The answer to these contentions is that there was no evidence showing that Mrs. Murphy ever knew of the contents of the O'Leary letter or that he had in fact written any letter at all. Even conceding that such presumption as appellants contend for might arise, it would at best, in view of the other evidence to the contrary in the record, merely raise a conflict, in which event the conclusions of the trial court must prevail. (*Rice* v. *Carey,* 170 Cal. 748 [151 Pac. 135].)

Neither is there any presumption of employment, such as to bind the defendant, arising, as plaintiffs contend, from the fact that plaintiffs are licensed attorneys and as such appeared in this proceeding for the defendant. [4] An attorney's contract of employment must be proved like any other contract of employment, and if there is shown a lack of authority on the part of one of the contracting parties there is no valid contract. We are satisfied that the conclusions reached by the trial court are correct and are fully supported by the evidence, and the judgment appealed from is, therefore, affirmed.

Tyler, P. J., and Kerrigan, J., concurred.