[Civ. No. 45399. Second Dist., Div. One. Aug. 8, 1975.]

DUNNE AND GASTON, Plaintiff and Appellant, v.
DONALD H. KELTNER, Defendant and Respondent.

**COUNSEL**

Dunne & Gaston and F. Warde Brand, Jr., for Plaintiff and Appellant.

Keltner & Schreiber, Kregal & Goodheart and Edwin C. Schreiber for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—In conjunction with defendant's withdrawal from plaintiff, a continuing law partnership, they entered into an agreement pertaining to the share of an attorneys' fee defendant would receive upon successful termination of a certain (Brower) case retained by plaintiff firm. Later

plaintiff referred the case to other counsel who settled it and took 60 percent of the total attorneys' fee as their share. A dispute arose as to whether defendant's portion of the fee was to be diminished accordingly, thus plaintiff filed this action in declaratory relief.[1] It appeals from the adverse judgment.

The facts are undisputed. Plaintiff is a law partnership; defendant, an attorney, and plaintiff were partners at one time during which Wayne Brower, seeking a lawyer, contacted defendant; through this contact the Gaston-Keltner firm obtained Brower's case which it thereafter referred to another lawyer, Dunne, not then an associate. In 1969 a new law partnership was formed consisting of Gaston, Keltner, Dunne and a fourth lawyer, Bringgold, who eventually withdrew from the partnership and never became a party to this action. On June 30, 1969, the parties herein executed a document titled "AMENDMENT TO PARTNERSHIP AGREEMENT OF DUNNE, BRINGGOLD, GASTON & KELTNER" reciting that defendant Keltner was to withdraw from the partnership and a provision (paragraph 10),[2] the subject of this litigation. After defendant's withdrawal from the partnership plaintiff referred the Brower cause to another legal firm; in this respect plaintiff and that firm entered into a written agreement whereby plaintiff was to receive 40 percent of the attorneys' share of any recovery by Brower, and the firm handling the case, 60 percent thereof. Ultimately the latter firm settled Brower's case for a figure which resulted in a total attorney's fee of $98,771.73. Under plaintiff's arrangement with the firm, plaintiff received $39,508.68 out of that fee whereupon it sent defendant what was reputed to be one-sixth of this sum, $6,584.78, which he retained but advised plaintiff that under

---

[1]Defendant cross-complained for a different and separate sum owed to him under another obligation; plaintiff stipulated he was entitled thereto. This sum is included in the judgment, but is not at issue on appeal.

[2]"10. PERSONAL INJURY CASES. Keltner has brought into the partnership certain personal injury cases, all of which are set forth on Exhibit 'B', attached hereto and incorporated herein by reference. KELTNER shall take with him as his own cases those so indicated on said Exhibit 'B', and shall leave with the partnership those personal injury cases so indicated on Exhibit 'B', with those cases being left for the partnership, said DUNNE, BRINGGOLD & GASTON, jointly and severally will pay to KELTNER the percentage of the attorneys' fees recovered on said cases as set forth on Exhibit 'B', and said percentage of attorneys' fees will become a lien upon the fees paid in that particular case. DUNNE, BRINGGOLD & GASTON, jointly and severally hold KELTNER harmless from any fee or other claim made by DAVID DE LOACH in excess of KELTNER'S referral fee on these cases and will pay any damages suffered by KELTNER including a reasonable attorney's fee incurred in connection therewith." Exhibit "B" to the agreement, titled "PERSONAL INJURY CASES Retained by Partnership," contained the following pertinent language: "WAYNE BROWER vs. HARDING Referral Fee to KELTNER 1/6"

paragraph 10 of their agreement he believed himself entitled to one-sixth of the entire attorneys' recovery, a total of $16,461.95.

The parties stipulated that the resolution of this cause rests entirely upon the proper construction of paragraph 10 of this agreement.[3] The trial court interpreted the language of paragraph 10 as providing for one-sixth of the *entire* attorneys' recovery to be paid to defendant, regardless of the circumstance that after defendant withdrew as a partner plaintiff and the new firm made an arrangement which reduced plaintiff's share; and entered a corresponding judgment which awarded defendant the difference between the sum to which he was thus entitled and that which he had been paid by plaintiff. The trial court took no extrinsic evidence as to the intent of the parties in connection with paragraph 10, the parties having stipulated that the cause be submitted without oral testimony; thus construction of the provision presented a question of law. We are not bound by the court's construction (*Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.,* 1 Cal.3d 266, 272 [81 Cal.Rptr. 849, 461 P.2d 33]; *Prickett* v. *Royal Ins. Co. Ltd.,* 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711]; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257]) but our interpretation of the language of paragraph 10 is in accord therewith.

There is nothing in the record to show that at the time the agreement was executed the parties intended, or even contemplated, that Brower's case subsequently was to be referred to another legal firm which would also share in the total attorneys' fee (the trial court expressly found that there was no such intention)[4]; and the stipulated facts establish that plaintiff entered into the arrangement with the new firm subsequent to the execution of the agreement containing paragraph 10 and after defendant had withdrawn as a partner. Moreover, there is no showing that defendant thereafter personally consented to this new referral and fee-sharing arrangement. The trial court found that defen-

---

[3]Each party vigorously contends that the other "prepared" the agreement, including paragraph 10, and that accordingly construction of any of its ambiguous terms must be applied against the other pursuant to section 1654, Civil Code. The record does not resolve the question of who should be deemed to be the "preparer," but it plainly discloses that the terms of the instrument were evolved through negotiations; and it has been held that when an agreement is arrived at by negotiating, the "preparer" principle should not be applied against either party. (*Indenco, Inc.* v. *Evans,* 201 Cal.App.2d 369, 375 [20 Cal.Rptr. 90].)

[4]"At the time of the dissolution of the partnership, KELTNER had no reason to believe DUNNE would not handle the case and, to the contrary, rightfully could expect him to do so." (Finding 14B.)

dant had not even been consulted in this respect.[5] ■ One vital element in the construction of a contract is the intention of the parties in relation to its execution; and in determining this intention the court may look to the circumstances surrounding the making of the agreement, including the object, nature, and subject matter of the writing, and thereby "place itself" for this purpose in the same situation in which the parties found themselves at the time of contracting. (Civ. Code, § 1647; Code Civ. Proc., § 1860; *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 38, fn. 5 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.,* 20 Cal.2d 751, 761 [128 P.2d 665]; *In re Marriage of Williams,* 29 Cal.App.3d 368, 378 [105 Cal.Rptr. 406]; *Jegen* v. *Berger,* 77 Cal.App.2d 1, 8 [174 P.2d 489].) In an analogous circumstance, wherein an attorney and client enter into a contingency fee arrangement thereafter the former is not permitted, without the client's knowledge and consent, to employ associate counsel and ultimately compensate the associate out of the client's share of his recovery. (*Porter* v. *Elizalde,* 125 Cal. 204, 206-207 [57 P. 899]; cf. *Johnson* v. *California I. M. T. Assn.,* 24 Cal.App.2d 322, 335 [74 P.2d 1073]; *Cormac* v. *Murphy,* 58 Cal.App. 366, 369 [208 P. 360].)

■ Paragraph 10 uses this language, "[plaintiff] will pay to Keltner the percentage of the attorneys' fees recovered." The words "recovery" or "recovered" have the common connotation of representing the *entirety* of a sum obtained by process and course of law which includes settlement (*People* v. *Reis,* 76 Cal. 269, 279 [18 P. 309]; *Rowe* v. *Holmes,* 63 Cal.App.2d 46, 49 [146 P.2d 45]; *Cordes* v. *Harding,* 27 Cal.App. 474, 479-480 [150 P. 650]); and the parties to the agreement were attorneys who would be expected to think in terms of such a connotation. Thus, and in consideration of the fact that it was not then contemplated that the case later would be referred to other counsel who too would share in the fee, we find it reasonable to assume that the parties intended that defendant would receive a one-sixth share of the entire fee resulting from disposition of the Brower case; and further, that had the parties intended that defendant was to be paid only one-sixth of the sum plaintiff ultimately was paid by reason of diminution through a subsequent referral,[6] they would have used a clause similar to "earned or

[5]"Plaintiffs are entirely responsible for the genesis of the dispute. The Plaintiffs were aware of the AGREEMENT with KELTNER, and it was their decision to refer the case to the HARNEY [new counsel] office, without consulting KELTNER and reconsidering their arrangement with him in the context of the proposed association." (Finding 14H.)

Below plaintiff made no objection to either of the cited findings, nor did it propose any counterfindings, and has raised no objection to either on appeal.

[6]By a logical, although admittedly unrealistic, extension of plaintiff's position, if it had

received by the partnership" rather than language relating to the complete "recovery" of fees. Moreover, we note that reference to the Brower case on Exhibit "B," providing for the one-sixth fee to defendant, is directly followed by five other named cases also to be "Retained by Partnership"—each likewise identified with an amount of "referral fee" to be received by defendant, three being for "1/6." We regard this form of listing, when viewed in light of the provision in paragraph 10 binding plaintiff to pay defendant "the percentage of attorneys' fees recovered on *said cases* as set forth in Exhibit 'B' " (italics ours), as clearly manifesting an intention by the parties that the Brower case was to be treated precisely as would be the others listed—without any intent that an exception could be created unilaterally by plaintiff as to the manner in which only the "one-sixth" in the Brower case was to be computed.

Appellant continuously urges that even if it be conceded that defendant could be entitled to the full one-sixth under a "referral" agreement, the situation should be regarded differently because a "partnership dissolution" agreement is involved here. The rationale behind this bare argument (unsupported by citation of authority) is not clearly enunciated. We can only assume that it means to suggest that a partner who is a party to the dissolution of a partnership can only look to the actual assets in the possession of the partnership (here the amount of fee actually received by it). Were we to accept the circumstance of defendant's withdrawal from the partnership, which thereafter continued its existence, as such a "dissolution" which we cannot do [Exhibit "B" recites, "Referral fee to Keltner"], it is hornbook law that parties bargaining at arms length may make any arrangement they desire; and even in a true dissolution there is nothing to prevent one partner from agreeing to pay another a disproportionate share of the partnership assets.

Appellant also urges that its referral of the Brower case to the new legal firm was a sensible one and probably produced a greater overall attorneys' fee than it could have earned otherwise. However, this is clearly a matter of speculative argument which has nothing to do with the merits of the cause.

The judgment is affirmed.

Wood, P. J., concurred.

agreed to give the new firm the *entire* fee, defendant would thereafter have been entitled to nothing by way of his "1/6" share.

**THOMPSON, J.**—I concur in the majority opinion which I view as a scholarly analysis clearly and concisely disposing of the issues raised by the combating lawyer-litigants.

I add to that opinion my personal view that nothing contained in our opinion should be construed as approving the referral fee arrangement which gave rise to the funds in dispute. The stipulated facts indicate an arrangement by which the parties involved in the litigation before us referred the Brower personal injury-malpractice action to a skilled specialist in an arrangement by which the referring counsel retained an interest of 40 percent of the eventual contingent fee.[1] The record is silent as to the extent to which the client was informed of the referral, the referring lawyers' referral fee, the client's right to compensate the referring lawyers on other than a contingent basis while reducing the referred lawyer's percentage contingent fee by what would otherwise have been the referral percentage, and the extent to which the referring lawyers acted in their client's interest and not their own in making the fee arrangement with the lawyer to whom the case was referred.

In my judgment, the fiduciary duty of a lawyer to his client requires that before a lawyer refer the client's matter to another, he: (1) inform the client of his intention to refer the matter and the reasons why; (2) inform the client of any referral fee arrangement; (3) give the client the option of compensating the referring attorney for the reasonable value of services performed up to the date of referral so that the percentage of contingent fee that would otherwise be a referral fee will go to benefit the client; and (4) inform the client of the potential conflict in interest if the client elects to permit a referral fee based upon a proportion of a total contingent fee so that the client may himself negotiate the fee with the lawyer to whom the case is referred.

Unless the client is so informed and then intelligently and knowingly acquiesces in the referral fee arrangement, it is my view that the referring lawyer holds his referral fee in constructive trust for the client. From the tenor of the stipulated facts, such may well be the situation in the case at bench.

I reach my conclusion of the referring lawyer's obligation upon the basic principles of the duty of a fiduciary. Arguments of public policy dictate the same result. In an era where recovery in tort is founded

---

[1] The briefs discuss the arrangement as a referral fee and not as an association of counsel dividing a fee upon the basis of the value of work actually done.

primarily upon socialization of the loss occasioned by injury to person and property (*Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 253 [66 Cal.Rptr. 20, 437 P.2d 508]), the society which bears that loss must be protected against arrangements which prevent the recovery from reaching the party injured, reduced only by necessary legal fees and other expenses of litigation. The pure referral fee, which compensates one lawyer with a percentage of a contingent fee for doing nothing more than obtaining the signature of a client upon a retainer agreement while the lawyer to whom the case is referred performs the work, is far from necessary to the injured person's recovery. To the extent that the referral fee is paid for that purpose, loss has not been socialized. Rather, the obtaining of business by a lawyer who, by his own motion, has conceded his inability to handle it has been subsidized.