671 A.2d 613

RAVICH, KOSTER, TOBIN, OLECKNA, REITMAN & GREEN-
STEIN, P.C., PLAINTIFF–APPELLANT, v. ELLIOT H.
GOURVITZ, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 19, 1995—Decided February 29, 1996.

534

Michels, P.J.A.D., filed dissenting opinion.

Before Judges MICHELS, VILLANUEVA and KIMMELMAN.

Appellants *Ravich, Koster, Tobin, Oleckna, Reitman & Greenstein,* submitted a *pro se* brief *(Bruce W. Radowitz,* on the brief).

*Elliot H. Gourvitz* submitted a *pro se* brief.

The opinion of the court was delivered by

VILLANUEVA, J.A.D.

Plaintiff appeals from a Special Civil Part order, purportedly based upon stipulated facts, that plaintiff is not entitled to a referral fee under a written agreement with defendant because the trial judge "found no authority to allow the payment of

referral fees in matrimonial actions." We reverse and remand to the trial court to have judgment entered in favor of plaintiff.

In October 1988 Michael N. Tobin, Esq., of the law firm of Ravich, Koster, Tobin, Oleckna, Reitman and Greenstein, P.C. (plaintiff), formerly Shevick, Ravich, Koster, Tobin, Oleckna and Reitman, was consulted by Ninette Hoff who was seeking representation in a matrimonial action. Plaintiff chose not to undertake the representation but, instead, referred Hoff to defendant Elliot H. Gourvitz, a certified civil trial attorney. Tobin contacted defendant, then a member of the firm Gourvitz & Braun, to discuss the referral. Gourvitz represented that a 25% referral fee would be paid to plaintiff as the money was received from the client.

On October 17, 1988, defendant acknowledged the referral and memorialized the agreement between plaintiff and defendant in a letter that he signed personally.[1] The division of fees was to be determined in accordance with *R.* 1:39–6(d). Gourvitz & Braun made payments to plaintiff of 25% of some of the fees received.

The total fee earned by defendant or his successors in the Hoff matter as determined by the District Fee Arbitration Committee was $29,271. The referral fee to be paid to plaintiff according to the agreement was $7,317.75 or 25% of the total fee. Defendant made payments totalling $2,110.25, which leaves a balance allegedly due of $5,207.50.

---

[1] The letter dated October 17, 1988, states in part:

I received from this client, the sum of $7,000.00 and have deposited the sum of $3,500.00 into my operating account. Pursuant to DR2–107(3), I am herewith forwarding to you $875.00 which represents 25% of the initial retainer deposited by me.

I bill my clients on the first of each month, which billing shows the amount of work done and the total cost of same. As I forward it to the client, you will receive copies of the billing, and when more than the $5,000.00 is earned, I will forward to you additional moneys from the subsequent moneys received from the client.

Plaintiff filed this lawsuit against defendant to recover $5,207.50 plus interest. Defendant filed an answer but did not set forth any affirmative defense that the agreement was unenforceable. During a pretrial conference before a Superior Court judge, the parties stipulated to several facts. Specifically, they agreed that the figures set forth in the statement of facts in plaintiff's submission were accurate and acceptable; at the time of the offer and acceptance, defendant was a member of a partnership known as Gourvitz & Braun; defendant acknowledged his obligation up to the amount which had been paid to him while a member of that partnership. The legal issue was whether defendant was personally liable for the balance due plaintiff on the entire obligation or whether his liability terminated after defendant became a member of a professional association.

The judge determined that he could decide the issue without submission of a formal motion and the parties' briefs. Plaintiff submitted two letter memoranda. Defendant submitted one letter memorandum asserting that Gourvitz, Diamond, Hodes, Braun and Diamond, a Professional Association, was a successor law firm to Gourvitz & Braun, and all subsequent fees paid went into the professional association which has since dissolved and has no assets; Mr. Tobin referred the client to defendant's first firm, Gourvitz & Braun, which engaged in her representation, and the professional association took over that representation; there has been no proof submitted of total fees received by the professional association, only a statement that $14,271 was previously paid and an Arbitration Determination which sets forth the fact that an additional $15,000 was due by the client; there is no proof before the court that any of those monies went anywhere other than to the professional association; and at the conference, it was stipulated that the Arbitration Determination's figures were correct, but it was never stipulated that these monies were received.

On May 17, 1995, the trial judge issued a letter opinion in which he stated the following:

The court has reviewed the submission and argument concerning plaintiff's attempt to collect a residual matrimonial referral fee. At issue is whether *R.* 1:39–6 limits referral fees to Civil Part only and does not extend to Family Part matters.

Plaintiff is a law firm with a significant civil negligence practice. Defendant is a matrimonial law specialist who is coincidentally a certified civil trial attorney. The New Jersey Supreme Court has yet to establish a certification for matrimonial trial attorneys. *See Certification Plan Vague, Says Family Bar,* 138 N.J.L.J. 892 (Oct. 31, 1994).

Article 6, § 3, ¶ 3 of the New Jersey Constitution divides the Superior Court into different Parts. *See generally D'Angelo v. D'Angelo,* 208 N.J.Super. 729, 732, 506 A.2d 851 (Ch.Div.1986), which noted the jurisdictional limits between the Superior Court Law Division/Probate part and Chancery Division/Family Part.

This Court has found no authority to allow the payment of referral fees in matrimonial actions. The plaintiff's complaint is therefore dismissed with prejudice.

■ On appeal, plaintiff argues that *R.* 1:39–6(d) applies to the referral of a matrimonial matter to a certified civil trial attorney and defendant is personally liable for the fees based upon the agreement he signed personally. The legal matter which was referred to defendant, a certified civil trial attorney, was the representation of a party in a matrimonial proceeding.

*R.* 1:39–6(d), provides as follows:

A certified trial attorney who receives a case referral from a lawyer who is not a partner in or associate of the certified attorney's law firm or law office may divide a fee for legal services with the referring attorney or the referring attorney's estate. The fee division may be made without regard to services performed or responsibility assumed by the referring attorney, provided that the total fee charged the client relates only to the matter referred and does not exceed reasonable compensation for the legal services rendered therein.

The judge dismissed the complaint relying on *R.* 1:39–6(d) which he ruled does not apply to Family Part matters since only civil or criminal trial attorneys are certified. This is an unduly restrictive reading of the rule. The Family Part is in the Chancery Division which is a civil court. *R.* 5:1–1, governing practice in the Chancery Division, Family Part, specifically states that "[t]he rules in Part V shall govern family actions. All family actions shall also be governed by the rules in Part I insofar as applicable. Civil family actions shall also be governed by the rules in Part IV insofar as applicable and except as otherwise provided by the rules in Part V." Part IV contains the rules governing civil procedure. There

is no prohibition in any of the foregoing Parts of paying a referral fee. *R.* 1:39–6(d) does not prohibit payment by a certified civil trial attorney, although solely a matrimonial practitioner, of a referral fee to the referring attorney.

Here, plaintiff relied upon, first, a written referral agreement from a certified civil trial attorney—defendant herein—and, second, the referral rule in effect at that time. It justifiably believed that the agreement was enforceable and would be honored by the defendant.[2] The fact that the Supreme Court has approved certification for "matrimonial attorneys" and prohibited referral fees in matrimonial actions in the future [3] does not mean that such practice was prohibited when this matrimonial matter was started and concluded nor does it mean that *R.* 1:39–6(d) should not be enforced according to its plain language.

■ Our function is to interpret the meaning of the statutes or rules and apply them to the facts. *See Watt v. Mayor of Franklin,* 21 *N.J.* 274, 277, 121 *A.*2d 499 (1956). When the statutes are clear and unambiguous, we need look no further than their words and phrases for their true intent and purpose. *Beaugard v. Johnson,* 281 *N.J.Super.* 162, 169, 656 *A.*2d 1282 (App.Div.1995). The language of defendant's obligation under the agreement which he signed personally is clear and unambiguous. Therefore, he is

---

[2] We note that in the hearing before the Family Part Practice Committee's General Procedures Subcommittee regarding certification of matrimonial attorneys and whether referral fees should be permitted for such a referral, defendant Elliot H. Gourvitz backed referral fees for matrimonial lawyers, asserting that a constitutional issue of equal protection could be at stake. He also questioned why family lawyers should be treated differently from other certified attorneys when it come to referral fees. 4 *New Jersey Lawyer* 2327 (Nov. 20, 1995).

[3] The Supreme Court announced its decision in a Notice to the Bar published in the *New Jersey Lawyer,* 4 *N.J.L.* 2274 (Nov. 13, 1995). The Court approved using "matrimonial law" for certification. The Court has instructed the Board on Trial Attorney Certification to prepare implementing Rules and Regulations in respect of Matrimonial Law certification.

personally liable for whatever fees he or his successor firms received.[4]

Because the case was referred to defendant, he remains liable on his agreement to pay a referral fee. When he brought his matters into the newly-formed firm it should have been with the understanding that there was an outstanding referral obligation. One can assign assets but cannot assign liabilities. The responsibility to pay plaintiff's referral fee was and is defendant's personal liability.

We reverse and remand to the trial court to have judgment entered in favor of plaintiff against defendant in the amount of $5,207.50, together with interest from the date the moneys were received by defendant or his law firms.

MICHELS, P.J.A.D., dissenting.

I dissent because I believe that Judge Dietz in the Law Division, Special Civil Part, properly held that plaintiff Ravich, Koster, Tobin, Oleckna, Reitman & Greenstein could not collect a referral fee from defendant Elliot H. Gourvitz in a matrimonial action where plaintiff neither performed any service nor assumed any responsibility in the management of the case.

In New Jersey the general rule is that with but one exception created in 1979 by *R.* 1:39–6(d), referral fees are only permissible when the referring attorney performs some service or assumes some responsibility in the management of the case. *RPC* 1.5(e) expressly provides that:

> Except as otherwise provided by the Court Rules, a division of fee between lawyers who are not in the same firm may be made only if:

---

[4] Defendant has never denied under oath that he or his firms did not receive the full amount of the arbitration award. Although defendant in his counter-statement of facts in his brief states that there is "no proof in fact that these monies were received by Gourvitz, Diamond, Hodes, Braun & Diamond, P.A., or by the defendant, Elliot H. Gourvitz individually," he does not make this argument in his brief. *See R.* 2:6–2(a)(5).

(1) the division is in proportion to the services performed by each lawyer, or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; and

(2) the client consents to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

The one exception to this fundamentally sound rule is when cases are referred to a certified civil or criminal trial attorney. *R.* 1:39-6 of the Rules of General Application, which deals with the certification of attorneys as civil or criminal trial attorneys, explains the effect of such trial attorney certification. *R.* 1:39-6(d), which deals with the division of fees, provides:

A certified trial attorney who receives a case referral from a lawyer who is not a partner in or associate of the certified attorney's law firm or law office may divide a fee for legal services with the referring attorney or the referring attorney's estate. The fee division may be made without regard to services performed or responsibility assumed by the referring attorney, provided that the total fee charged the client relates only to the matter referred and does not exceed reasonable compensation for the legal services rendered therein.

*R.* 1:39-6(d) is admittedly broad and read literally would appear to permit referral fees by a certified civil trial attorney regardless of any services performed or responsibility assumed in the management of a case by the referring attorney. However, I believe that this rule should not be read or construed to permit referral fees in matrimonial actions. To permit referral fees in such cases, where the fee is based on an hourly rate for the services performed as distinguished from personal injury contingent fee cases, where the fee is based on the amount of the recovery, will not only increase the costs to matrimonial litigants, but will undermine the dignity of and erode public confidence in the legal profession.

Using referral fees for cases in which an attorney merely forwards a case to another attorney without performing any service or assuming any responsibility for the management of the case has engendered much criticism. For example, in an oft-quoted passage, Henry S. Drinker, a leading authority on legal ethics and author of *Legal Ethics,* remarked that:

It makes the law too much of a business if you are practicing the way you would as a broker. The lawyer is not supposed to get paid for anything but the legal services he renders, and selling a man a client is not a legal service. I think it is

beneath the dignity of the profession to take money for something that is not a legal service.

[7 U.Fla.L.Rev. 433, 434 (1954).]

Professor Geoffrey C. Hazard, Jr., also a well respected authority on legal ethics, has commented that:

A referral fee amounts to a fee for not taking a case, and that is virtually unreasonable per se.

... If the professional who makes the referral cannot competently perform the necessary professional service, ethical tradition requires him simply to forward the case to one who can. He should not exploit his knowledge about competent specialists to collect a fee from a client who happens to have come his way.

[Geoffrey C. Hazard, Jr., *Realities of Referral Fees Here to Stay,* Nat'l L.J., Nov. 16, 1987, at 13.]

Some courts have expressed the same concerns with respect to the legality and ethical propriety of referral fees. For example, in *McFarland v. George,* 316 *S.W.*2d 662 (Mo.Ct.App.1958), the Missouri Court of Appeals reversed a judgment that awarded the plaintiff-attorney a portion of a fee allowed to the defendant-attorney in a will contest where the plaintiff-attorney performed no services and assumed no responsibility for managing the case, emphasizing:

Admission to the practice of law is something more than the admission to an association of businessmen or tradesmen. It is a membership in an ancient and honorable profession that has for its goal the furtherance of the administration of justice and the attorney is an instrument for the achievement of this noble purpose. An attorney is an officer of the courts and as such is intimately connected with every operation of the courts. Therefore, members of the public who seek the services of an attorney cannot be treated by him as mere merchandise or article of trade in the market place.

[*Id.* at 670–71.]

In construing the applicable Missouri Supreme Court Rule 4.34 (which is the same as former Canon 34 of the American Bar Association and similar to *RPC* 1.5(e) of the New Jersey Rules of Professional Conduct), the Missouri Court held that:

Supreme Court Rule 4.34 makes it mandatory that there be a division of service or responsibility before a division of fees between lawyers is permitted. The rule clearly states there shall be "no division of fees" unless there is a division of service or responsibility and then the division of fees must be based on the amount of service or responsibility each contributed.

. . . .

In construing Supreme Court Rule 4.34 little difficulty is found in dealing with the word service, but the word "responsibility" on first blush seems to offer more difficulty. The primary meaning of "responsibility" as found in the dictionaries is the state of being answerable for an obligation. *Niagara Fire Extinguisher Co. v. Hibbard*, 7 Cir., 179 *F.* 844, 848. The term "responsibility" includes judgment, skill, ability and capacity. *Ohio Power Co. v. N.L.R.B.*, 6 Cir., 176 *F.*2d 385, 387 [cert. denied, 338 *U.S.* 899, 70 *S.Ct.* 249, 94 *L.Ed.* 553 (1949) ]. Legal responsibility is the state of one who is bound or obliged in law and justice *to do something. Behnke v. New Jersey Highway Authority*, 13 *N.J.* 14, 97 *A.*2d 647, 654. *In Crockett v. Village of Barre*, 66 *Vt.* 269, 29 *A.* 147, the court said: "One's duty is what one is bound or under obligation to do. One's responsibility is its liability, obligation, bounden duty." The word "responsibility" as used in the rule means the doing of something. Any other meaning would render the rule meaningless. We agree with the statement of Henry S. Drinker, in his work, Legal Ethics, when discussing the rule at p. 186, where he said: "The service and responsibility must, to be effective, relate to the handling of the case." If the division of fees is to be placed on the basis of how much service or responsibility each contributed in connection with the legal services rendered in the case, obviously, the responsibility called for under the rule must be related to the legal services rendered in the actual handling of the case.

Merely recommending another lawyer to a client or referring a client to another lawyer is not the performance of a legal service or the discharge of responsibility. Such a practice if approved would make the lawyer a mere broker and would destroy the professional standing of lawyers as such and in time would tear down the wall that separates them from non-professional groups. Such a practice would make them tradesmen in the market place. As we pointed out herein it was the practice of the bar prior to the adoption of Rule 4.34 to charge and pay a finder's or referral fee. However, such a practice or custom is unavailing as a justification for its continuance in the face of the plain intent of the rule. It was the purpose of Rule 4.34 to condemn this practice. No other meaning can be reached.

[316 *S.W.*2d at 671–672 (emphasis in original).]

Similarly, in *Palmer v. Breyfogle*, 217 *Kan.* 128, 535 *P.*2d 955 (1975), one attorney sued other attorneys to recover a forwarding or referral fee of one-third of the total attorneys fee collected in a divorce case. The plaintiff-attorney's claim was grounded on *DR* 2–107, which differs from *RPC* 1.5(e), only in that it required that any division of fees between attorneys be made in proportion to the services performed and the responsibility assumed by each. Model Code of Professional Responsibility DR 2–107 (1969). The Supreme Court of Kansas reversed a judgment that awarded the plaintiff-attorney a forwarding fee where he did not perform any service or assume any responsibility in the divorce case, stating that:

> The evils of the referral fee have been well recognized.... Members of the public who seek the services of an attorney cannot be treated by him as mere merchandise or articles of trade in the market place. A client is not an article of property in which a lawyer can claim a proprietary interest, which he can sell to other lawyers expecting to be compensated for the loss of a property right.
>
> [*Id.* at 965–66.]

The Kansas Supreme Court expressly "reject[ed] the concept that 'getting the client' is the performing of a legal service or the assumption of a responsibility," *id.* at 969, and held that:

> The plaintiff here should have been denied relief for the simple reason that there was a complete failure of proof by substantial competent evidence that he performed any services or assumed any responsibility related to the divorce case where the attorney fee was earned. It seems to us that where a lawyer sues his client or anyone else for services rendered, he should have some reasonable idea and be able to state the nature of the services which he performed and the professional time and effort he expended in rendering such services. We would require no less of an artisan or a laboring man who is seeking compensation on the basis of quantum meruit.
>
> [*Ibid.*]

However, subsequently, the Kansas Court's holding in *Palmer v. Breyfogle, supra,* that a referral fee be only in proportion to services performed and responsibility assumed was superseded by Kansas MPRC 1.5(g). *See Ryder v. Farmland Mut. Ins. Co.,* 248 *Kan.* 352, 807 *P.*2d 109, 116 (1991).

The potential evils of referral fees have also been recognized by the United States Supreme Court in *Weil v. Neary,* 278 *U.S.* 160, 172, 49 *S.Ct.* 144, 149, 73 *L.Ed.* 243, 250 (1929). There, the Supreme Court was confronted with an agreement to divide fees between the attorneys without notice to the trial court. The Supreme Court noted that "the evils to which such a practice might lead are manifest" and that "[c]ertainly there would be a temptation to both [attorneys] to seek so to increase the allowance as to secure a more generous provision for each. Motive for excessive allowance could hardly be more direct." *Ibid.*

In *Moran v. Harris,* 131 *Cal.App.*3d 913, 182 *Cal.Rptr.* 519 (1982), while the court upheld a forwarding fee arrangement under the existing rules in California, it nonetheless observed that:

The practice of forwarding fees among lawyers, part of our legal subculture, (see *Turner v. Donovan* (1935), 3 *Cal.App.2d* 485, 486–487, 39 *P.2d* 858), remains with us even though the detrimental effect upon the client is obvious. "... The pure referral fee, which compensates one lawyer with a percentage of a contingent fee for doing nothing more than obtaining the signature of a client upon a retainer agreement while the lawyer to whom the case is referred performs the work, is far from necessary to the injured person's recovery. To the extent that the referral fee is paid for that purpose, loss has not been socialized. Rather, the obtaining of the business by a lawyer who, by his own motion, has conceded his inability to handle it has been subsidized." (*Dunne & Gaston v. Keltner*, 50 *Cal.App.3d* 560, 566–67, 123 *Cal.Rptr.* 430 (1975) (conc. opn. of Thompson, J.)) The honoring of a referral fee is even more puzzling where the referring attorney is merely heeding the Rules of Professional Conduct in rejecting a case which he does not have the requisite skill or experience to handle competently.

[*Id.* at 522 (citations omitted).]

More recently in New Jersey, in a notice to the bar, our Supreme Court announced that it planned to adopt a separate certification program for matrimonial law attorneys. *See New Jersey Law Journal,* Nov. 27, 1995, p. 2. The Court stated that this program would be adopted without any referral fee provision substantially for the reasons given by the Practice Committee on General Procedures. *Ibid.*

In the Family Part Practice Committee Report, the Subcommittee stated that:

*The Subcommittee strongly and unanimously opposes the introduction of referral fees in family cases.* The Subcommittee believes that to do so is inimical to the public interest, is inconsistent with the nature of Family Law practice and would do substantial violence to the image of family law practice. The Subcommittee contends that the practical effect of permitting referral fees would be to increase the counsel fee costs to litigants.

[Supreme Court of New Jersey, Family Part Practice Committee, General Procedures Subcommittee, *Report Concerning Family Lawyer Certification and Referral Fees* ("Subcommittee Report"), January 19, 1995, p. 5. (emphasis in original).]

The report also stated that "[t]he Subcommittee concludes that permitting referral fees by family lawyers will disserve the public and will ultimately increase the cost of delivering legal service to the public." *Id.* at 26. The Subcommittee specifically referred to the testimony of the New Jersey State Bar Association Family Law Section Chairman Thompson who testified:

To permit referral fees in matrimonial cases can only increase the overall cost of services. To imply to the contrary is simply not realistic. There is no benefit to the public in permitting referral fees. Frankly, I can envision no benefit to the matrimonial bar.

[*Ibid.*]

The Subcommittee noted the comment in *Carty, Note, Money for Nothing? Have the New Michigan Rules of Professional Conduct Gone Too Far in Liberalizing the Rules Governing Attorney Referral Fees?*, 68 U.Det.L.Rev. 229, 250 (1991), in which the author stated that:

While a client's cost presumably will not be increased in contingency fee cases, *it is inconceivable that clients will not pay more in flat fee or hourly rate cases. How long will an attorney, who feels his services for a divorce are worth $300.00, continue to pay up to $100.00 of this to the referring attorney without raising his fee to account for this added expense?* Furthermore, the fact remains that when the legal costs to society are considered, a significant portion of all "legal fees" paid by the client are going to pay for the nonlegal services of referring clients.

[*Id.* at 29 (emphasis added).]

The Subcommittee concluded:

[T]he fee aspects of family law matters are, in fact, different. They are almost universally hour based. They are rarely result oriented. They are almost never flat fees.

Family law fees are treated differently by the courts. In family law matters, counsel fee applications are entertained pursuant to R.4:42-9. Such applications are only elsewhere permitted in a limited number of cases, i.e. out of a fund in court; in probate or foreclosure proceedings, or in an action upon the liability or indemnification policy of insurance in favor of a successful claimant, among others. Matrimonial fees are frequently involuntarily imposed upon the opposing litigant. It is inconceivable that the public would understand or accept a court allowance of referral fees.

. . . .

. . . The Subcommittee simply believes that referral fees in family actions are a bad idea, will not serve the public and, indeed, will increase the public's unfortunate perception about the family law practice, not to mention cause a significant increase in the costs of family law litigation.

[*Id.* at 30–31.]

In a subsequent report, the Subcommittee recommended that "the certification program when approved should not contain referral fees." Supreme Court of New Jersey, Family Part Practice Committee, General Procedures Subcommittee, *Addendum to Report Concerning Family Lawyer Certification and*

*Referral Fees* ("Subcommittee Report Addendum"), July 10, 1995, p. 3.

In sum, I would adhere to the general rule, codified in *RPC* 1.5(e) and not read or construe *R.* 1:39–6(d) to allow referral fees in matrimonial matters without the performance of some services or the assumption of some responsibility in the management of the case. I would affirm, therefore, the judgment under review substantially for the reasons expressed by Judge Dietz in his letter opinion of May 17, 1995.